**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VR GLOBAL PARTNERS, L.P.,

                Plaintiff,

      -against-

PETRÓLEOS DE VENEZUELA, S.A.,
PDVSA PETRÓLEO, S.A., and PDV
HOLDING, INC.,

              Defendants.

Case No. 1:23-cv-05604-DLC

**ORAL ARGUMENT REQUESTED**

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ........................................................................................3

     A.    PDVSA Entities and the 2020 Notes ................................................3

     B.    Circumstances Surrounding the Exchange Offer.........................4

     C.    Appointment and Recognition of Guaidó as Interim President..................6

     D.    Declaratory Judgment Action .........................................................7

STANDARD OF REVIEW ...........................................................................................8

     A.    Motion to Dismiss Standard............................................................8

     B.    Heightened Pleading for Fraud ......................................................8

ARGUMENT ..................................................................................................................9

    I.    **Plaintiff's Securities Claims Are Barred By *Morrison*** .......................9

     A.    The 2020 Notes Are Not Listed on a U.S. Exchange ...................9

     B.    Plaintiff Fails to Allege the Transactions Occurred Within the United States ...................................................................................10

     C.    Plaintiff Fails to Establish Its Claims Are Not "Predominantly Foreign" ......................................................................................11

    II.    **Plaintiff's Section 17(a) Claim Is Non-Actionable** .........................13

    III.    **Plaintiff's Fraud and Aiding and Abetting Fraud Claims Are Time Barred** .........................................................................................13

    IV.    **Plaintiff Fails To State A Claim Under Section 10(b) And Rule 10b-5**...........15

     A.    Plaintiff Cannot Recast Its Breach of Contract Grievance As Fraud........16

     B.    Plaintiff Fails to Plead A Strong Inference of Scienter.............17

     C.    Plaintiff Fails to Plead Reasonable Reliance .............................20

     D.    Plaintiff Fails to Plead Causation.................................................22

     E.    Plaintiff Fails to Plead "Scheme" Liability................................24

     F.    Plaintiff's Common Law Fraud Claim (Count 1) Fails for the Same Reason as the Section 10(b) and Rule 10b-5 Claim (Count 3) .................25

    V.    **Plaintiff's Fraud Claims That Rely Upon Defendants' Petitions To The U.S. Government Are Barred**........................................................25

    VI.    **Plaintiff Fails to Plead Aiding and Abetting Fraud**.........................27

    VII.    **Plaintiff's Alternative Common Law Fraud Claim is Baseless and Must Be Dismissed** ........................................................................28

    VIII.    **Plaintiff's Declaratory Judgment Claim Should Be Dismissed** .....................29

**TABLE OF CONTENTS**
(continued)

Page

**CONCLUSION** .................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)......................................................................................10, 11, 12

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009).....................................................................................28

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
   57 F.4th 85 (2d Cir. 2023) ......................................................................................................30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................8

*Ashland Inc. v. Morgan Stanley & Co.*,
   652 F.3d 333 (2d Cir. 2011).....................................................................................................20

*Assigned Container Ship Claims, Inc. v. Am. President Lines, Ltd.*,
   784 F.2d 1420 (9th Cir. 1986) .................................................................................................26

*Assoun v. Assoun*,
   No. 14-cv-1368, 2015 WL 110106 (S.D.N.Y. Jan. 7, 2015) ....................................................27

*Astroworks, Inc. v. Astroexhibit, Inc.*,
   257 F. Supp. 2d 609 (S.D.N.Y. 2003)......................................................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...........................................................................................8, 18, 19

*Bai v. Tegs Mgmt., LLC*,
   No. 20-cv-4942, 2022 WL 602711 (S.D.N.Y. Mar. 1, 2022) (Cote, J.) ..................................25

*Banco Safra, S.A.- Cayman Islands Branch v. Samarco Mineração S.A.*,
   849 F. App'x 289 (2d Cir. Mar. 4, 2021).......................................................................6, 10, 12

*Bd. of Managers of 325 Fifth Ave. Condo. v. Cont'l Residential Holdings LLC*,
   149 A.D.3d 472 (N.Y. App. Div. 1st Dep't 2017)....................................................................28

*In re Bear Stearns Cos., Sec., Derivative, and ERISA Litig.*,
   995 F. Supp. 2d 291 (S.D.N.Y. Feb. 5, 2014)..........................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................8

*Biofrontera AG v. Deutsche Balaton AG*,
  No. 18-cv-5237, 2020 WL 1489788 (S.D.N.Y. Mar. 27, 2020) ............................................9

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1993) .............................................................................................3

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
  98 F.3d 13 (2d Cir. 1996) ...............................................................................................16

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ..................................................................................................26, 27

*Cascardo v. Stacchini*,
  100 A.D.3d 675 (N.Y. App. Div. 2d Dep't 2012) ............................................................21

*Cavello Bay Reinsurance Ltd. v. Stein*,
  986 F.3d 161 (2d Cir. 2021) ...........................................................................................11

*Cavello Bay Reinsurance Ltd. v. Stein*,
  No. 18-cv-11362, 2020 WL 1445713 (S.D.N.Y. Mar. 25, 2020), *aff'd*, 986
  F.3d 161 (2d Cir. 2021) ..................................................................................................11

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.*,
  511 U.S. 164 (1994) .......................................................................................................28

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
  168 F.3d 119 (3d Cir. 1999) ...........................................................................................26

*Coll v. First Am. Title Ins. Co.*,
  642 F.3d 876 (10th Cir. 2011) ........................................................................................26

*Commodity Futures Trading Comm'n v. Gorman*,
  No. 21-cv-870, 2023 WL 2632111 (S.D.N.Y. Mar. 24, 2023) .........................................11

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*
  No. 17-mc-00151-LPS (D. Del. May 4, 2022) ........................................................25, 26, 27

*CSI Inv. Partners II, L.P. v. Cendant Corp.*,
  180 F. Supp. 2d 444 (S.D.N.Y. 2001) .............................................................................17

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
  No. 20-cv-7436, 2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022) ......................................8, 19

*In re Dynagas LNG Partners LP Sec. Litig.*,
  504 F. Supp. 3d 289 (S.D.N.Y. 2020) .............................................................................17

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .......................................................................................17, 18

iv

*Elliott Assocs. v. Porsche Automobil Holding SE*,
  759 F. Supp. 2d 469 (S.D.N.Y. 2010), *aff'd sub nom. Parkcentral Glob. Hub
  Ltd.*, 763 F.3d 198 (2d Cir. 2014) ........................................................................10

*Finkel v. Stratton Corp.*,
  962 F.2d 169 (2d Cir. 1992) ...............................................................................13

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ...........................................................12, 18, 20, 28

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
  313 F. Supp. 2d 339 (S.D.N.Y. 2004) ..................................................................27

*Gabriel Cap., L.P. v. Natwest Fin., Inc.*,
  137 F. Supp. 2d 251 (S.D.N.Y. 2000) ..................................................................29

*Gebhardt v. Allspect, Inc.*,
  96 F. Supp. 2d 331 (S.D.N.Y. 2000) ......................................................................8

*Gottwald v. Sebert*,
  Nos. 32 & 33, 2023 WL 3959051 (N.Y. June 13, 2023) ......................................27

*Gross v. Chambre*,
  No. 031761/2015, 2017 WL 8729048 (N.Y. Sup. Ct. Apr. 6, 2017)................27, 28

*Jiménez* v. *Palacios*,
  250 A.3d 814 (Del. Ch. 2019), *aff'd*, No. 399, 2019, 2020 WL 4207625 (Del.
  July 22, 2020).......................................................................................................20

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..................................................................................18

*In re Kingate Mgmt. Ltd. Litig.*,
  784 F.3d 128 (2d Cir. 2015)..................................................................................28

*Kottler v. Deutsche Bank AG*,
  607 F. Supp. 2d 447 (S.D.N.Y. 2009)...................................................................15

*Lentell v. Merrill Lynch Co.*,
  396 F.3d 161 (2d Cir. 2005)..................................................................22, 23, 24

*Lipin v. Hunt*,
  No. 14-cv-1081, 2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015)............................27

*Liu v. Intercept Pharms., Inc.*,
  No. 17-cv-7371, 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020)............................18

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ............................................................................20, 21

*Lutin v. N.J. Steel Corp.*,
    No. 93-cv-6612, 1996 WL 636037 (S.D.N.Y. Nov. 1, 1996) ...................................20

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
    747 F. Supp. 2d 406 (S.D.N.Y. 2010) ........................................................................25

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998) (per curiam) ...................................................................25

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) .......................................................................................16

*Mindspirit, LLC v. Evalueserve Ltd.*,
    No. 15-cv-6065, 2016 WL 11707410 (S.D.N.Y. Sept. 26, 2016) ...........................19

*Miracle Mile Assocs. v. City of Rochester*,
    617 F.2d 18 (2d Cir. 1980) .........................................................................................26

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ...........................................................................................1, 9, 10

*Oleg Cassini, Inc. v. Serta, Inc.*,
    No. 11-cv-8751, 2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ...............................29

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010) .......................................................................................15

*Papa's–June Music, Inc. v. McLean*,
    921 F. Supp. 1154 (S.D.N.Y. 1996) ..........................................................................17

*Parkcentral Global Hub Ltd. v. Porsche Auto Holdings S.E.*,
    763 F.3d 198 (2d Cir. 2014) ...................................................................................9, 11

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. July 20, 2006) ........................................................25

*Petróleos de Venezuela, et al. v. MUFG Union Bank, N.A., et al.*,
    19-cv-10023-KPF (S.D.N.Y.) ......................................................................... *passim*

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .........................................................................................24

*In re Qudian Inc. Sec. Litig.*,
    No. 17-cv-9741, 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) .............................21

*Rafter v. Liddle*,
    704 F. Supp. 2d 370 (S.D.N.Y. 2010)..................................................................15

*Scherer v. Gaildon Med. Sys., Inc.*,
    No. 02-cv-8847, 2004 WL 2884312 (S.D.N.Y. Dec. 10, 2004)..............................13

*SEC v. Goldman Sachs & Co.*,
    790 F. Supp. 147 (S.D.N.Y. 2011).......................................................................9

*SEC v. Rio Tinto PLC*,
    41 F. 4th 47 (2d Cir. 2022) ................................................................................24

*Silsby v. Ichan*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014)....................................................................18

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).....................................................................8

*Stolow v. Greg Manning Auctions Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y. 2003), *aff'd*, 80 F. App'x 722 (2d Cir. 2003).......................15

*Stone v. Sutton View Cap., LLC*,
    No. 17-cv-1574, 2017 WL 6311692 (S.D.N.Y. Dec. 8, 2017)........................................21, 22

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
    450 Fed. App'x 32 (2d Cir. 2011)........................................................................20

*In re Teva Secs. Litig.*,
    512 F. Supp. 3d 321 (D. Conn. 2021)....................................................................24

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965)....................................................................................26, 27

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)......................................................................................30

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*,
    479 F. Supp. 2d 388 (S.D.N.Y. 2007)...................................................................12

**Statutes**

15 U.S.C. §§ 78u-4(b)(1), (2) ................................................................................9

22 U.S.C. § 9702..............................................................................................6

**Other Authorities**

Ana Isabel Martinez and Corina Pons, *Venezuela's PDVSA offers $7 billion bond swap to ease debt burden*, Reuters (Sept. 13, 2016), available at https://www.reuters.com/article/us-venezuela-pdvsa-idUSKCN11J2E2 ...................................5

Bolivarian Republic of Venezuela National Assembly, *Agreement Authorizing the Appointment to Hold Positions for an Intervention Entity, Named "Ad-Hoc Administrative Board,"* dated February, 13, 2019 (translated) .................................................6

Bolivarian Republic of Venezuela National Assembly, *Resolution on the Respect of the Inherent Non-Transferable Powers of the National Assembly on Contracts of Public Interest*, dated May 26, 2016 (translated)...................................6

Bolivarian Republic of Venezuela National Assembly, *Resolutions on the Current Financial Situation of Petróleos de Venezuela, S.A.*, dated September 27, 2016 (translated) ........................................................................................................6

Bolivarian Republic of Venezuela National Assembly, *Resolution that Reiterates the Invalidity of PDVSA's 2020 Bonds*, dated October 15, 2019 (translated) ..........................7

Carolyn Cui, *Venezuela's PdVSA to Offer to Swap $7 Billion in Debt*, Wall St. J. (Sept. 14, 2016), available at https://www.wsj.com/articles/venezuelas-pdvsa-to-offer-to-swap-7-billion-in-debt-1473878226 ......................................................5

Executive Order No. 13692 (Mar. 8, 2015)..........................................................................5

Press Statement, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela*, U.S. Dep't of Archives (Jan. 23, 2019) ...............................................6

State Dep't, Mesa de la Unidad Democrática (MUD) *Statement on Dialogue in Venezuela, Statements of John Kirby* (July 8, 2016) ....................................................5

State Dep't, *Remarks at the Special Meeting of the OAS Permanent Council on Venezuela, Statements of Michael J. Fitzpatrick* (June 21, 2016) ..............................5

State Dep't, *Venezuela: Inclusion of All Parties a Key to Solving Challenges* (Feb. 17, 2016) ..............................................................................................................5

*Venezuela 2022 Human Rights Report*, U.S. Dep't of State (Mar. 20, 2023).................................6

Defendants Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A. ("PDVSA Petróleo"), and PDV Holding, Inc. ("PDVH") (collectively, the "Defendants" or the "PDVSA Parties") respectfully submit this brief in support of their motion to dismiss the Complaint ("Compl.," Dkt. 1) filed by plaintiff VR Global Partners, L.P. ("VR Capital" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's Complaint has no business in federal court.  It is a brazen attempt to jump ahead of the claims brought by the Trustee and Collateral Agent on behalf of all of the 2020 Noteholders, Plaintiff included, the appeal of which is pending before the Second Circuit.  Moreover, the crux of Plaintiff's case rests on the supposition that Defendants committed securities fraud by secretly harboring an intent to break promises they made in connection with an Exchange Offer, whereby 2017 Notes were exchanged for 2020 Notes.  This is because, Plaintiff theorizes, Defendants harbored a secret belief that they lacked capacity to enter into the 2020 Notes absent National Assembly approval and, as a consequence, failed to disclose that the 2020 Notes were invalid, illegal, and unenforceable due to the lack of that approval.  But even affording Plaintiff every reasonable inference, the Complaint cannot withstand the most basic factual or legal scrutiny.

As a threshold matter, Plaintiff's Section 10(b) securities claims are barred under the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, which restricts the extraterritorial application of the federal securities laws to securities on domestic exchanges or otherwise domestic securities transactions.  Here, the Exchange Offer was a foreign, rather than domestic, transaction—among other features, the issuer of the 2020 Notes (PDVSA) was a Venezuelan corporation, the 2020 Notes were listed and traded on a foreign exchange (the Luxembourg Stock Exchange), and the notes were placed with Banco de Venezuela, a foreign bank.  And Plaintiff's Section 17(a) claim is separately a non-starter because that section of the Securities Act does not furnish a private cause of action.  To the extent that Plaintiff's claims

1

purport to turn on Defendants' activities directed towards the U.S. Government, those claims are barred by the *Noerr-Pennington* doctrine.

Plaintiff's securities fraud and aiding and abetting fraud claims are also hopelessly untimely. All of Plaintiff's key misrepresentation allegations are from 2016, approximately seven years from the time Plaintiff decided to file the Complaint in June 2023. Whether measured by the five-year statute of limitations for securities fraud claims or six years for common law fraud, Plaintiff is outside the statute of limitations. Nor can Plaintiff credibly claim that the fraud was somehow hidden from it to toll the statute of limitations. To the contrary, Plaintiff affirmatively pleads, and thus concedes, that Defendants "laid bare their ongoing fraudulent scheme" no later than October 29, 2019, more than two years before the Complaint was filed.

On the merits, Plaintiff fares no better. At the outset, Plaintiff never bothers to allege facts that would establish either causation or standing to bring this suit as Plaintiff never pleads, as it must, how it acquired the 2020 Notes, when it acquired them, and for what price. Regardless, Plaintiff's Section 10(b) allegations about how Defendants purportedly schemed to defraud Plaintiff are completely illogical. Plaintiff asks this Court to accept the patently unreasonable scienter inference that Defendants deliberately hatched a scheme whereby it would pay Plaintiff principal and interest (*i.e.*, perform) on the 2020 Notes for approximately *three full years* before revealing it never intended to honor the 2020 Notes. This ignores the far more plausible and compelling inference that, in 2016, the then *Maduro*-controlled PDVSA initiated the Exchange Offer asserting the 2020 Notes were legal and only later, when the United States declared Maduro's presidency illegitimate and officially recognized the National Assembly, did the payments stop because the National Assembly rejected the validity of the Exchange Offer and 2020 Notes, in line with their earlier actions to prevent the 2020 Notes from being issued in the first instance.

For this reason among others, Plaintiff also cannot plead now, and could never plead, reasonable reliance. Even at the time of the Exchange Offer, the National Assembly had publicly passed a resolution categorically rejecting the Exchange Offer as unconstitutional, casting well-publicized public doubt on whether the 2020 Notes would be valid. And Plaintiff's alternative fraud theory of liability, based on statements made by Defendants in their first-filed declaratory judgment action challenging the validity of the 2020 Notes in part because of the lack of National Assembly approval, similarly fails for lack of reliance, where representatives of the 2020 noteholders like Plaintiff are adverse to Defendants in that proceeding.

At bottom, Plaintiff is asking this Court to sustain a securities fraud complaint for a foreign securities issuance based on seven-year-old allegations where the entire case rests on the premise that Defendants hid from Plaintiff a purported *belief* that the securities issuance was invalid, when that very risk was publicly disclosed and reported on at the time of the offering. Under the heightened pleading standards of the PSLRA and Rule 9(b), such nonsensical claims should not be credited. For these reasons and others, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

A. <u>PDVSA Entities and the 2020 Notes</u>

PDVSA is an oil and natural gas company established by the Venezuelan government in 1975 to control all operations relating to Venezuela's oil and natural gas reserves. ¶ 22.[2] It is wholly owned by the Bolivarian Republic of Venezuela ("Venezuela").[3] *Id.* PDVSA owns both

---

[1] In evaluating Rule 12(b)(6) motions, courts may consider "matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

[2] Paragraph citations are to the Complaint. To the extent paragraph numbering is duplicated in the Complaint, Defendants cite to the paragraphs in the Complaint's Factual Allegations section.

[3] PDVSA appears before this Court at the direction of the Ad-Hoc Board of PDVSA, appointed by the legitimate National Assembly government. *See infra* 6.

PDVSA Petróleo and PDVH.   ¶ 23.   PDVH owns 100% of the shares of Citgo Holding, Inc. ("CITGO Holding"), which in turn owns 100% of the shares of CITGO Petroleum Company ("CITGO"), a U.S.-based oil refiner.  *Id.*

In April 2007, PDVSA issued $3 billion of notes due in April 2017 (the "April 2017 Notes").  ¶ 25.  In October 2010 and January 2011, PDVSA issued an additional $6.15 billion of senior notes due in November 2017 (the "November 2017 Notes," and, together with the April 2017 Notes, the "2017 Notes").  *Id.*

On September 16, 2016, the Maduro-controlled PDVSA announced an exchange offer (the "Exchange Offer") to refinance the 2017 Notes for new notes maturing on October 27, 2020 (the "2020 Notes").   ¶ 33.   PDVSA also filed an offering circular and a supplement to the offering circular on September 26, 2016 (the "Offering Circular"), Broughel Decl. Ex. 1,[4] containing the Exchange Offer terms.   *Id.*   The 2020 Notes were governed by an Indenture, dated October 28, 2016 (the "Indenture"; Broughel Decl. Ex. 2), and secured pursuant to a Pledge Agreement, dated October 28, 2019 (the "Pledge Agreement"; Broughel Decl. Ex. 3).  PDVSA Petróleo guaranteed both the 2017 Notes and the 2020 Notes.  ¶¶ 25, 42–44.  The 2020 Notes were secured by a pledge by PDVH of 50.1% CITGO Holding stock.  ¶ 36.  The 2020 Notes were listed on the Luxembourg Stock Exchange, traded on the "the Euro MTF Market" of the Luxembourg Exchange, and were placed with Banco de Venezuela.  Broughel Decl. Ex. 1, Offering Circular at ii, 22.  Plaintiff allegedly owns $30,000,000 of the 2020 Notes.  ¶ 15.

B.  Circumstances Surrounding the Exchange Offer

Leading up to the Exchange Offer, the U.S. Government issued numerous public statements (in connection with accompanying sanctions) declaring that the Maduro regime was

---

[4] "Broughel Decl." refers to the Declaration of Kevin P. Broughel, dated October 4, 2023, and exhibits attached thereto, filed in support of the Motion.

undermining Venezuelan democracy and violating the Venezuelan constitution.[5]   Against this backdrop, on the day of the Exchange Offer, *Reuters* reported that "[s]ome are concerned about potential political opposition to using Citgo shares [as collateral]" and that "[c]ritics in the opposition, which now controls the National Assembly, argue involving Citgo would constitute a de facto privatization of a state asset that requires parliamentary approval."[6]   The next day, *The Wall Street Journal* noted in an article that "Venezuela's constitution requires the National Assembly to approve any new indebtedness of the republic."[7]

On September 27, 2016, the National Assembly adopted a resolution (the "September Resolution") that "reject[ed] categorically" the pledge of 50.1% of the PDV Holding's CITGO Shares as collateral for the 2020 Notes.   ¶ 38.   The September Resolution condemned the transaction and called for an immediate investigation of the Maduro regime's mismanagement and

---

[5] Executive Order No. 13692 (Mar. 8, 2015) (Maduro regime engaged in "significant public corruption"); State Dep't, *Venezuela: Inclusion of All Parties a Key to Solving Challenges* (Feb. 17, 2016) (noting U.S. is "deeply concerned by decisions of the Venezuelan Supreme Court ***limiting the authority of the recently elected National Assembly***, which have undermined Venezuelan democracy," and calling for respect for, inter alia, "the separation of powers within the government") (emphasis added); State Dep't, *Remarks at the Special Meeting of the OAS Permanent Council on Venezuela, Statements of Michael J. Fitzpatrick* (June 21, 2016) (expressing concern "that the National Assembly ***has not been allowed to carry out its rightful role***" and calling the Maduro regime to "***honor its own constitutional mechanisms***" by demonstrating "respect for the rule of law and representative democracy, including the essential elements of the separation of powers and independence of the branches of government") (emphasis added); State Dep't, Mesa de la Unidad Democrática (MUD) *Statement on Dialogue in Venezuela, Statements of John Kirby* (July 8, 2016) (calling on the Maduro regime to "***respect the constitutional role of the National Assembly***") (emphasis added).

[6] Ana Isabel Martinez and Corina Pons, *Venezuela's PDVSA offers $7 billion bond swap to ease debt burden*, Reuters (Sept. 13, 2016), available at https://www.reuters.com/article/us-venezuela-pdvsa-idUSKCN11J2E2.

[7] Carolyn Cui, *Venezuela's PdVSA to Offer to Swap $7 Billion in Debt*, Wall St. J. (Sept. 14, 2016), available at https://www.wsj.com/articles/venezuelas-pdvsa-to-offer-to-swap-7-billion-in-debt-1473878226.

misuse of PDVSA for political purposes.[8]  This resolution was preceded by another resolution issued by the National Assembly on May 26, 2016, declaring that for "contracts of national, state or municipal interest concluded by and between the National Executive and companies not domiciled in Venezuela, the Constitution categorically mandates, without exception, the approval of the National Assembly" and that such approval is "a condition of the validity of the contract."[9] The Maduro regime completed the Exchange Offer on October 28, 2016.  ¶¶ 43–44.

C.  Appointment and Recognition of Guaidó as Interim President

On January 23, 2019, the National Assembly invoked Article 233 of the Venezuelan Constitution to declare Maduro's presidency illegitimate and name National Assembly President Juan Guaidó as the Interim President of Venezuela.[10]  The same day, the U.S. President declared that the Maduro regime was "illegitimate" and officially recognized "the President of the Venezuelan National Assembly, Juan Guaidó, as the Interim President of Venezuela" and the National Assembly as the "only legitimate branch of government duly elected by the Venezuelan people."[11]  ¶ 71.  Guaidó subsequently appointed the PDVSA Ad-Hoc Board, which the National Assembly ratified.[12]  The United States continues to recognize the National Assembly as the only legitimate democratically elected body of Venezuela.  *See* 22 U.S.C. § 9702.

---

[8] Bolivarian Republic of Venezuela National Assembly, *Resolutions on the Current Financial Situation of Petróleos de Venezuela, S.A.*, dated September 27, 2016 (translated), Broughel Decl. Ex. 4, September Resolution; ¶ 38.

[9] Bolivarian Republic of Venezuela National Assembly, *Resolution on the Respect of the Inherent Non-Transferable Powers of the National Assembly on Contracts of Public Interest*, dated May 26, 2016 (translated), Broughel Decl. Ex. 5, May 2016 Resolution.

[10] *Venezuela 2022 Human Rights Report*, U.S. Dep't of State, at 34 (Mar. 20, 2023).

[11] Press Statement, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela*, U.S. Dep't of Archives (Jan. 23, 2019).

[12] Bolivarian Republic of Venezuela National Assembly, *Agreement Authorizing the Appointment to Hold Positions for an Intervention Entity, Named "Ad-Hoc Administrative Board,"* dated February, 13, 2019 (translated); Broughel Decl. Ex. 6, Ad-Hoc Agreement.

D. Declaratory Judgment Action

In April 2019, when an interest payment on the 2020 Notes became due, the PDVSA Ad-Hoc Board made the interest payment under protest to protect the CITGO Shares.  ¶¶ 75, 81.  On October 15, 2019, the National Assembly passed a resolution "reiterat[ing] the invalidity of [the 2020 Notes]," reaffirming its earlier rejection of the pledged collateral and initiation of investigations for alleged crimes derived from the 2020 Notes transaction, and ratifying that the Indenture was invalid under the Venezuelan Constitution.[13]  PDVSA thereafter did not pay additional principal or interest due on the 2020 Notes.  ¶¶ 83, 87.

On October 29, 2019, PDVSA, PDVSA Petróleo, and PDVH commenced an action in this Court seeking a declaration as to the invalidity of the 2020 Notes, arguing that the 2020 Notes were invalid because they were "contracts of national interest" requiring National Assembly approval—which the National Assembly did not provide but instead "reject[ed] categorically."  ¶¶ 38, 90, 91; *Petróleos de Venezuela, et al. v. MUFG Union Bank, N.A., et al.*, 19-cv-10023-KPF (S.D.N.Y.) (the "Declaratory Judgment Action").  The Trustee and Collateral Agent, who purport to represent all bondholders—including VR Capital—brought counterclaims against the PDVSA Parties for breach of contract, declaratory judgment, unjust enrichment, and *quantum meruit*.  ¶ 92.  On June 10, 2020, the parties moved for summary judgment on a subset of these claims, including the Venezuelan law issues.  ¶ 93.  The Court issued an Opinion and Order granting the Trustee and Collateral Agent's motion for summary judgment on October 16, 2020, on the grounds that New York law applied to the 2020 Notes, and that, under New York law, the 2020 Notes were valid and enforceable.  ¶ 94.  The PDVSA Parties appealed.

---

[13] Bolivarian Republic of Venezuela National Assembly, *Resolution that Reiterates the Invalidity of PDVSA's 2020 Bonds*, dated October 15, 2019 (translated); Broughel Decl. Ex. 7, October Resolution.

The case remains on appeal.  *See* Case Nos. 20-3858, 20-4127 (2d Cir. 2020).  The Second Circuit certified questions of law to the New York Court of Appeals on October 13, 2022.  *See* Case No. 20-3858, Dkt. 324 (2d Cir. Oct. 13, 2022).  Briefing before the New York Court of Appeals concluded on July 25, 2023, and is awaiting oral argument.

## STANDARD OF REVIEW

### A.  Motion to Dismiss Standard

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Federal Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To prevail, plaintiffs must go beyond the "speculative level," *id.* at 555, and must do more than plead "[c]onclusory allegations or legal conclusions masquerading as factual conclusions," *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 Moore's Federal Practice ¶ 12.34(1)(b) (3d ed. 1997)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  Heightened Pleading for Fraud

A plaintiff alleging fraud must also satisfy the heightened pleading requirements of Rule 9(b).  *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 423–24 (S.D.N.Y. 2014).  These require that a plaintiff: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-cv-7436, 2022 WL 3100562, at *7 (S.D.N.Y. Aug. 3, 2022).

In addition, "private securities fraud actions must . . . meet the PSLRA's pleading requirements or face dismissal."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007).  The PSLRA requires that a plaintiff (1) "specify each statement alleged to have been

misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §§ 78u-4(b)(1), (2).

## ARGUMENT

### I.    Plaintiff's Securities Claims Are Barred By *Morrison*

Plaintiff's Section 17(a) Securities Act claim (Count 2) and Section 10(b) and Rule 10b-5 Exchange Act claim (Count 3) are barred by the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).  In *Morrison*, the Supreme Court held that, under the presumption against extraterritoriality, Section 10(b) applies only to (1) "transactions in securities listed on domestic exchanges" and (2) "domestic transactions in other securities."  561 U.S. at 267.[14]  Even where the transactions at issue are determined to be "domestic," Section 10(b) may still not apply under *Morrison* if the plaintiff's claims are "so predominantly foreign as to be impermissibly extraterritorial."  *Parkcentral Global Hub Ltd. v. Porsche Auto Holdings S.E.*, 763 F.3d 198, 215–17 (2d Cir. 2014).

### A.    The 2020 Notes Are Not Listed on a U.S. Exchange

The 2020 Notes were listed on the Luxembourg Stock Exchange, traded on the "the Euro MTF Market" of the Luxembourg Exchange, and placed with Banco de Venezuela.  Broughel Decl. Ex. 1, Offering Circular at ii, 22.  By nature of the underlying securities, the transactions alleged in Plaintiff's Complaint are therefore not domestic.  *See Biofrontera AG v. Deutsche Balaton AG*, No. 18-cv-5237, 2020 WL 1489788, at *6–7 (S.D.N.Y. Mar. 27, 2020) (dismissing

---

[14] Subsequent cases have clarified *Morrison* applies to other securities laws as well, including Section 17(a).  *See, e.g.*, *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 147, 164 (S.D.N.Y. 2011).

claims under *Morrison* for transaction regarding tender offers of common stock traded on a German Exchange).

> B.      Plaintiff Fails to Allege the Transactions Occurred within the United States

Plaintiff further fails to allege that its acquisition of any 2020 Notes constituted "domestic transactions in other securities."  A securities transaction not listed on a domestic exchange is considered "domestic" if the parties either: (1) incurred irrevocable liability to execute the transaction within the United States (in the case of the purchaser, to take and pay for the underlying securities; in the seller's case, to deliver the underlying securities); or (2) transferred title to the underlying securities within the United States.  *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67–68 (2d Cir. 2012).  "[A] party's residency or citizenship is irrelevant to the location of a given transaction."  *Id.* at 70.  Conclusory allegations regarding the physical location of the transaction parties or their agents, the currency or bank accounts used in the transaction, or the reporting of the transaction in the United States are insufficient to plead a "domestic transaction."  *Banco Safra, S.A.- Cayman Islands Branch v. Samarco Mineração S.A.*, 849 F. App'x 289 (2d Cir. Mar. 4, 2021) (summary order).

Plaintiff fails to allege any details of any transaction it may have entered into related to the 2020 Notes.  The Complaint generally references the Exchange Offer, *see, e.g.*, ¶ 109, but not how or where Plaintiff allegedly acquired its 2020 Notes, from whom Plaintiff allegedly acquired them, and where title to Plaintiff's 2020 Notes was transferred.  *See Elliott Assocs. v. Porsche Automobil Holding SE*, 759 F. Supp. 2d 469, 471, 476 (S.D.N.Y. 2010), *aff'd sub nom. Parkcentral Glob. Hub Ltd.*, 763 F.3d 198 (2d Cir. 2014) (dismissing plaintiffs' § 10(b) claims for failing to demonstrate a domestic transaction).

This pleading deficiency is fatal.  With no substantive allegations "indicating that irrevocable liability was incurred or that title was transferred within the United States," *Absolute Activist*, 677 F.3d at 62, Counts 2 and 3 require dismissal.

      C.      <u>Plaintiff Fails to Establish Its Claims Are Not "Predominantly Foreign"</u>

Even if this Court were to find that the underlying transactions were domestic, Plaintiff's securities claims are so predominantly foreign that they still must be dismissed.

In the Second Circuit, a domestic transaction is "necessary" but "not alone sufficient" to state a claim.  *Parkcentral Glob. Hub Ltd.*, 763 F.3d at 215.  Plaintiff fails to allege that its securities claims are not "so predominantly foreign as to be impermissibly extraterritorial" to survive dismissal.  *Id.* at 216; *see also Commodity Futures Trading Comm'n v. Gorman*, No. 21-cv-870, 2023 WL 2632111, at *10–13 (S.D.N.Y. Mar. 24, 2023) (dismissing fraud claims where issuer was Japanese and allegedly fraudulent statements were made in Japan); *Cavello Bay Reinsurance Ltd. v. Stein*, No. 18-cv-11362, 2020 WL 1445713, at *8–9 (S.D.N.Y. Mar. 25, 2020), *aff'd*, 986 F.3d 161 (2d Cir. 2021).

In fact, the allegations here are the opposite.  PDVSA, the issuer of the 2020 Notes, is a Venezuelan corporation, "wholly owned by [] Venezuela" and "established by the Venezuelan government to coordinate, monitor, and control all operations relating to the country's oil and natural gas reserves."  ¶¶ 16, 22.  The issuer is thus not only foreign, but directly affiliated with the sovereign nation of Venezuela.  The 2020 Notes are also guaranteed by PDVSA Petróleo, a Venezuelan corporation with its principal place of business in Venezuela.  ¶¶ 16–17.  The only defendant entity affiliated with the U.S. is PDVH, but PDVH's only role in this transaction was to make the pledge on which the 2020 Notes were secured.  This alone cannot suffice.  *See, e.g.*, *Cavello Bay Reinsurance Ltd. v. Stein*, 986 F.3d 161, 167–68 (2d Cir. 2021) (presence of a

"contingent and future" contractual requirement that "triggers some U.S. interest" is not enough to render a securities claim sufficiently domestic).

In addition, the challenged statements relate solely to Defendants' representations about their authorization to issue the 2020 Notes under a foreign legal document: the Venezuelan Constitution.  *See, e.g.*, ¶¶ 8, 50–68.  These statements were also primarily made in a foreign country, including the Offering Circular, certificates, and related contracts, all of which were signed by PDVSA representatives—each located and residing in Venezuela.  *See* Broughel Decl. Ex. 1, Offering Circular at 123–26 ("Unless otherwise indicated, the principal office for all of our directors and executive officers is located in Caracas, Venezuela.").  Moreover, the Offering Circular states that the 2020 Notes are not meant to be subject to U.S. securities regulation: "[t]he New Notes and the Guaranty have not been, and will not be, registered under the Securities Act or the securities of any state or other jurisdiction of the United States and may not be offered or sold in the United States."  Broughel Decl. Ex 1, Offering Circular at ii.

Plaintiff pleads only three facts that are arguably domestic.  *First*, Plaintiff pleads it is a U.S. entity.  ¶ 15.  But "[a] purchaser's citizenship or residency does not affect where a transaction occurs."  *Absolute Activist*, 677 F.3d at 69.  *Second*, Plaintiff pleads the Governing Documents or their drafts were filed with United States Securities and Exchange Commission ("SEC").  ¶ 33.  But reporting transaction information to a U.S. regulatory body does not confer domesticity.  *Banco Safra S.A.*, 849 F. App'x at 295 (summary order).  *Third*, Plaintiff pleads the 2020 Notes are governed by New York choice-of-law provisions.  ¶¶ 2, 48, 52, 55.  But choice of law provisions do not render Plaintiff's securities claims "domestic," as they "cannot be read to render wholly extraterritorial conduct territorial."  *Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 406 (S.D.N.Y. 2007).

## II.     Plaintiff's Section 17(a) Claim Is Non-Actionable

It is black-letter law that Section 17(a) of the Securities Act does not furnish a private cause of action.  *See, e.g.*, *Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992) ("[T]here is no private right of action under § 17(a).").  The Section 17(a) claim must be dismissed.

## III.    Plaintiff's Fraud And Aiding And Abetting Fraud Claims Are Time Barred

Plaintiff's fraud and aiding and abetting fraud claims are barred by the statute of limitations.  The statute of limitations for fraud is "six years from the date of the commission of the fraud, or two years from the date the fraud was or could reasonably have been discovered, whichever is longer."  *See Scherer v. Gaildon Med. Sys., Inc*., No. 02-cv-8847, 2004 WL 2884312, at *3 (S.D.N.Y. Dec. 10, 2004) (citing *D'Angelo v. City of N.Y.*, 929 F. Supp. 129, 133 (S.D.N.Y. 1996)).  The statute of limitations for securities fraud claims brought under Section 10(b) is the earlier of "(1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation." *In re Bear Stearns Cos., Sec.*, *Derivative, and ERISA Litig*., 995 F. Supp. 2d 291, 299 (S.D.N.Y. Feb. 5, 2014) (citing 28 U.S.C. § 1658 (b)).  The clock begins to run from the time that the allegedly fraudulent representations were made. *Id.* at 299.

Plaintiff's fraud claims could only have accrued in late 2016—that is, well more than six years before June 29, 2023, the date Plaintiff asserted its claims in this action.  Plaintiff premises both Count 1 (common law fraud against all Defendants) and Count 3 (violations of Section 10(b) and Rule 10b-5) on a series of alleged misleading statements and omissions in documents and filings made in connection with the Exchange Offer, which occurred in 2016.  Plaintiff points to statements in the Offering Circular and supplements to the Offering Circular filed on September 26, 2016.  ¶¶ 2, 46–49.  Plaintiff also alleges misstatements and omissions in the Indenture governing the 2020 Notes, executed on October 28, 2016. ¶¶ 50–52. Plaintiff further premises its fraud claims on the Pledge Agreement, as well as certain "Officer, Incumbency, and Secretary

Certificates," each of which were executed on October 28, 2016—the closing date of the Exchange Offer.  ¶¶ 53–55 (Pledge Agreement), ¶¶ 56–62 (Certificates).  Finally, Plaintiff points to alleged misstatements made by PDVSA's legal counsel, Hogan Lovells, in September and October of 2016.  ¶¶ 64–68.  Whether measured by the six-year common law period, or the five-year statutory period, the statute of limitations or repose has run.  Accordingly, Count 1 (common law fraud) and Count 3 (Section 10(b)) are untimely because they are based on alleged misstatements that predate June 29, 2017.

Plaintiff also cannot survive a statutory bar on grounds that any alleged fraud was discovered within two years of the filing of suit.  Defendants allegedly "defraud[ed] bondholders by inducing them to tender their 2017 Notes in exchange for 2020 Notes and/or purchase the 2020 Notes on the primary or secondary market, and then refusing to fulfill their repayment obligations under the 2020 Notes."  ¶ 46.  The alleged fraudulent action thus would have been discovered by 2020—when the bonds matured—more than two years prior to the Complaint filing.

Nor has Plaintiff plausibly alleged any facts to suggest any alleged fraud was concealed, or could not have been discovered until after 2021.  Plaintiff affirmatively alleges that Defendants "*laid bare* their ongoing fraudulent scheme" on October 29, 2019, when Defendants filed the Declaratory Judgment Action.  ¶¶ 13, 90 (emphasis added).  The Complaint also alleges that PDVSA defaulted on the 2020 Notes on October 28, 2019.  Plaintiff's own pleading thus makes clear it knew Defendants' position on the 2020 Notes by October 2019 at the latest, foreclosing any argument that the alleged fraud went undetected until within two years of filing the Complaint.  ¶¶ 108, 113, 120 (stating "Defendants' fraudulent scheme was continuous and ongoing *through October 2019*," and therefore pleading the fraud was uncovered in 2019) (emphasis added).  This defeats Plaintiff's quixotic contention that it was "lulled . . . into not bringing a cause of action

sooner."  ¶ 109; *see Rafter v. Liddle*, 704 F. Supp. 2d 370, 378 (S.D.N.Y. 2010).  In sum, this is a textbook example of a plaintiff that has pleaded itself "out of court by alleging information that defeats [its] claim."  *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003), *aff'd*, 80 F. App'x 722 (2d Cir. 2003).

Lastly, because Plaintiff's aiding and abetting fraud claim (Count 5) turns on its primary fraud claims (Counts 1 and 3), Plaintiff's aiding and abetting claim is likewise time-barred.  *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 461 (S.D.N.Y. 2009).

## IV.    Plaintiff Fails To State A Claim Under Section 10(b) And Rule 10b-5

To properly allege a claim "under § 10(b) and Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010).

Plaintiff alleges the following misstatements or omissions for its Section 10(b) claim:

- The PDVSA Defendants stated that "[t]he purpose of the Exchange Offer [was] to extend the maturities of and refinance the Existing Notes" and "to rearrange [their] debt profile" when Defendants' hidden "*purpose*" was to defraud bondholders.  ¶ 46.

- "The Offering Circular did not . . . identify as a risk factor that the 2020 Notes, the Indenture, or the Pledge Agreement were subject to challenge as invalid or illegal … [and] omitted the material fact that Defendants *believed* the 2020 Notes, the Indenture, and the Pledge Agreement were invalid, illegal, and unenforceable due to lack of approval by the National Assembly."  ¶ 47.

- "PDVSA did not disclose that it *believed* the Exchange Offer and the Governing Documents were in fact governed by Venezuelan law notwithstanding the New York choice-of-law provision."  ¶ 48; *see also* ¶ 52.

- PDVSA and PDVSA Petróleo did not disclose that "PDVSA and PDVSA Petróleo *believed* the transactions required approval by the National Assembly in order to be duly authorized."  ¶¶ 50, 51; Broughel Decl. Ex. 2, Indenture at 1.

15

- PDVSA and PDVSA Petróleo misrepresented that the 2020 Notes and Indenture were valid, when they *believed* they were invalid.  ¶ 52; Broughel Decl. Ex. 2, Indenture at 1.

- "PDVSA did not disclose that it *believed* it lacked capacity to enter into the Indenture, the 2020 Notes or Pledge Agreement absent National Assembly approval," as well as approving related resolutions.  ¶ 59; *see also* ¶¶ 56–58, 62–63.  The same allegation in substance is repeated for PDVSA Petróleo.  ¶¶ 60–61.

- PDVSA's legal advisors delivered opinions at Defendants' behest that the 2020 Notes were valid, "despite *holding the belief* that the 2020 Notes, the Indenture, and the Pledge Agreement were illegal, invalid, unenforceable, and not binding."  ¶¶ 67–68.

- PDVSA-associated individuals made various statements and took actions that allegedly demonstrated that the obligations under the 2020 Notes would be honored, while in private "the PDVSA Parties were developing legal strategies to repudiate the 2020 Notes."  ¶ 80; *see also* ¶¶ 75–82.

These allegations fail to allege a Section 10(b) claim for a myriad of reasons.

A.    <u>Plaintiff Cannot Recast Its Breach of Contract Grievance as Fraud</u>

It is well-settled that "[a]n action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations."  *Astroworks, Inc. v. Astroexhibit*, *Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) (citation omitted).  Indeed, "the failure to carry out a promise made in connection with a securities transaction is . . . a breach of contract" that "does not constitute fraud unless, *when the promise was made*, the defendant secretly intended not to perform or knew that he could not perform."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (emphasis added).

All of Plaintiff's allegations boil down to a single common theme: that the PDVSA Defendants never intended to fulfill the promises purportedly made in the Governing Documents. But this is precisely what courts have indicated is insufficient to support a claim of fraud in New York.  *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) ("[T]hese facts amount to little more than intentionally-false statements by Beladino

indicating his intent to perform under the contract.  That is not sufficient to support a claim of fraud under New York law."); *Papa's–June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim where the "fraud claim . . . merely appends allegations about [defendant's] state of mind to the claim for breach of contract").[15]

That Plaintiff's claims in actuality arise in contract is made only more obvious by the fact that the Trustee and Collateral Agent in the Declaratory Judgment Action—which represent interests of the bondholders including Plaintiff's interests—brought several breach of contract claims (but no fraud claims) that continue to be litigated against Defendants when they were represented by the same counsel representing Plaintiff here.  *See* Declaratory Judgment Action, ECF No. 40 at ¶¶ 204–20; ECF No. 271.

### B.  Plaintiff Fails to Plead A Strong Inference of Scienter

"To state a claim under Section 10(b) . . . plaintiffs must plead facts to establish scienter." *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 309 (S.D.N.Y. 2020).  "The standard to plead scienter . . . is higher than the familiar plausibility standard"—"a plaintiff must plead the factual basis which gives rise to a strong inference of fraudulent intent."  *Id.* (cleaned up).  A plaintiff can establish this "strong inference" of scienter by pleading, with particularity, "facts to show either . . . that defendants had the motive and opportunity to commit fraud, or . . . strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and *at least as*

---

[15] Plaintiff alleges that PDVSA's decision *to pay noteholders principal and interest* on the 2020 Notes was a continuation of its fraudulent scheme to hide its true intentions not to honor its obligations under the 2020 Notes.  ¶¶ 5, 73–75.  This position is nonsensical—if "the simple fact of nonperformance of a promise is insufficient to raise an inference of fraud," *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 180 F. Supp. 2d 444, 453 (S.D.N.Y. 2001), then surely *performance* of a contract is insufficient as well.

*compelling* as any opposing inference one could draw from the facts alleged."' *ATSI*, 493 F.3d at 99 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)) (emphasis in original). Here, the allegations fall far short of establishing a strong inference of scienter.

*First*, Plaintiff fails to allege motive and opportunity to commit fraud. A complaint must allege defendants "benefitted in some concrete and personal way from the purported fraud." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 198 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000)). The closest benefit alleged is a vague assertion that Defendants would "receive the benefit of the Exchange Offer and/or payment for the 2020 Notes" by virtue of their alleged fraudulent conduct. ¶ 13. A generalized allegation such as this fails to plead scienter. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

*Second,* Plaintiff does not adequately establish that the PDVSA Defendants engaged in conscious misbehavior or recklessness. Where "a plaintiff cannot plead motive and opportunity, allegations of conscious misbehavior or recklessness 'must be correspondingly greater.'" *Liu v. Intercept Pharms., Inc.*, No. 17-cv-7371, 2020 WL 1489831, at *14 (S.D.N.Y. Mar. 26, 2020) (quoting *Kalnit*, 264 F.3d at 142). Here, Plaintiff's allegations are conclusory claims that Defendants harbored a secret belief that the 2020 Notes were invalid and capitalized on that belief to defraud Plaintiff. *See, e.g.*, ¶ 6 ("Defendants privately held the belief that the 2020 Notes were invalid pursuant to the Venezuelan Constitution …."); ¶ 46 (Defendants' true "purpose in conducting the Exchange Offer . . . was to defraud bondholders by inducing them to tender …."). But none of these conclusory allegations of purported hidden beliefs establishes scienter. *See, e.g.*, *Silsby v. Ichan*, 17 F. Supp. 3d 348, 367 (S.D.N.Y. 2014) (failure to plead scienter where plaintiffs asserted defendant "believed" a company was insolvent but plaintiffs "pleaded no facts in support of this conclusory allegation"); *Mindspirit, LLC v. Evalueserve Ltd.*, No. 15-cv-6065, 2016 WL

11707410, at *11–12 (S.D.N.Y. Sept. 26, 2016) (allegations that defendant acted "with wrongful intent" regarding Stock Option Agreement did not support a claim for securities fraud under Section 10(b)).

Plaintiff *does not plead a single contemporaneous fact* to support its claims about Defendants' "true" beliefs and intentions at the time of the Exchange Offer. The only facts that Plaintiff alleges in support of its assertions are statements made *years after* the Exchange Offer, including statements made by persons who Plaintiff does not assert were in any way involved in the Exchange Offer at the time it was made. *See* ¶¶ 76, 77; *see generally* ¶¶ 77–83, 90–91 (detailing only statements made after April 2019). These asynchronous statements are wholly insufficient to establish a "strong inference" of scienter *at the time* Defendants' alleged misstatements were made, and *that* time period is what controls the analysis. *See Diesenhouse*, 2022 WL 3100562 at *7 (dismissing fraud claims where "[p]laintiffs . . . fail[ed] to allege . . . that [defendant's] misrepresentations and omissions were knowingly or recklessly misleading and false *at the time he made them*" other than describing plaintiff's conduct later in time) (emphasis added).

*Third*, there is a far more cogent and compelling inference of scienter to be drawn from the facts at hand. *ATSI*, 493 F.3d at 99. Specifically, the Maduro-controlled PDVSA initiated the Exchange Offer, claimed the bonds were legal, and made principal and interest payments under the 2020 Notes for approximately three years after the alleged misstatements and omissions were first made. At the same time, the National Assembly that had won control in December 2015 was, unequivocally and in public, "[c]ategorically reject[ing]" the defining feature of the Exchange Offer, ¶¶ 31, 38, and made eminently clear—as public reporting indicated—that the Exchange Offer was not constitutionally authorized, *supra* 4–6. Scienter cannot be imputed to the Maduro-controlled parties at the time of the Exchange Offer based on the *subsequent* recognition in 2019

that Defendants are controlled by Guaidó and the National Assembly.  *See Jiménez* v. *Palacios*, 250 A.3d 814, 839 (Del. Ch. 2019), *aff'd*, No. 399, 2019, 2020 WL 4207625 (Del. July 22, 2020) (The "recognition of one sovereign authority must exclude others, particularly when those other bodies have taken positions contrary to the recognized sovereign.").

      C.    <u>Plaintiff Fails to Plead Reasonable Reliance</u>

When evaluating allegations of reasonable reliance, courts examine "the sophistication and expertise of the plaintiff in financial and securities matters," "the existence of longstanding business or personal relationships," "access to the relevant information," "the opportunity to detect the fraud," and "the generality or specificity of the misrepresentations."  *Ashland Inc. v. Morgan Stanley & Co*., 652 F.3d 333, 337–38 (2d Cir. 2011).   Where investors are particularly sophisticated and information informing or rebutting the alleged fraud is in the public domain, courts will not find reliance reasonable.  *See, e.g.*, *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 450 Fed. App'x 32, 34–35 (2d Cir. 2011).  Plaintiff cannot adequately plead reasonable reliance for several reasons.

*First*, Plaintiff makes only conclusory assertions that it "reasonably relied" on Defendants' misleading statements and omissions.  *See* ¶¶ 49, 109, 133.  These do not satisfy Plaintiff's pleading burden.  *See Lutin v. N.J. Steel Corp*., No. 93-cv-6612, 1996 WL 636037, at *7 (S.D.N.Y. Nov. 1, 1996) ("[T]he bare allegation, without supporting facts, that [plaintiffs] relied on defendants' alleged misrepresentations and omissions does not suffice.").  Where a party alleges reliance on a putative misstatement that has been otherwise disclosed in the market as inaccurate— here, public reporting and the National Assembly's resolution, *supra* 4–6—there cannot be reasonable reliance. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 439 (S.D.N.Y. 2001).

*Second,* Plaintiff is a sophisticated investment fund.  As a sophisticated investment institution, Plaintiff had a duty to investigate information available to it to make investment decisions.  *See id.* at 439.  Here, there was ample information to put Plaintiff on notice of the alleged misconduct it now alleges occurred.  Plaintiff's Complaint itself acknowledges that, on September 27, 2016, the National Assembly, instead of providing its constitutional authorization, through an official act of state publicly "passed a resolution expressing disapproval" and "categorically rejecting" the Pledge prior to the Exchange Offer's closing.  ¶ 38.  This followed a previous National Assembly resolution in May 2016, declaring that "the Constitution categorically mandates, without exception, the approval of the National Assembly" for any such contract and that the National Assembly's approval is "a condition of the validity of the contract."  Broughel Decl. Ex. 5, May 2016 Resolution at 8.  And as Plaintiff alleges, public reporting contemporaneous to the 2020 Notes issuance indicated recognition of risks related to the validity of the bonds in light of the National Assembly's rejection thereof.  *See* ¶¶ 64–65.  In addition, Venezuela's Constitution is a public document, and any observer—particularly a sophisticated investor such as Plaintiff—could readily make its own, independent assessment of the validity of the Exchange Offer and the 2020 Notes. *See In re Qudian Inc. Sec. Litig.*, No. 17-cv-9741, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) ("[A]n alleged misstatement does not qualify as material if the relevant facts are 'already in the mix of public information' at the time . . . .").

Plaintiff makes specious references to the opinions of *Defendants'* legal counsel on the validity of the Exchange Offer and the 2020 Notes, presumably in an effort to further plead reliance.  ¶¶ 56, 57, 66–68.  But it is ironclad law that "plaintiff[s] cannot properly plead reasonable reliance on the representations of another party's counsel so as to support [their] claim[s] of fraud." *Cascardo v. Stacchini*, 100 A.D.3d 675, 676 (N.Y. App. Div. 2d Dep't 2012); *see also Stone v.*

*Sutton View Cap., LLC*, No. 17-cv-1574, 2017 WL 6311692, at *3 (S.D.N.Y. Dec. 8, 2017) ("Courts have routinely held that it is unreasonable for a party to rely on the advice of adversary counsel [ ] when both parties are aware that adverse interests are being pursued.").

As a sophisticated party faced with clear, public indications that there were questions about the validity of the Exchange Offer and the 2020 Notes and all of the means to assess the veracity of Defendants' representations, Plaintiff had a duty to undertake its own investigation but fails to assert anything to suggest that it "ma[de] use of the means of verification that were available to it." *Stone*, 2017 WL 6311692, at *3.  Accordingly, Plaintiff does not "properly plead reasonable reliance" on Defendants' purported misstatements and omissions, and its Section 10(b) claim must be dismissed.  *See id.*

      D.    <u>Plaintiff Fails to Plead Causation</u>

The Complaint also fails to adequately plead Defendants' alleged misstatements and omissions were the proximate cause of Plaintiff's alleged injuries.  Proximate causation consists of "both transaction and loss causation."  *Lentell v. Merrill Lynch Co.*, 396 F.3d 161, 172 (2d Cir. 2005).  "Transaction causation is akin to reliance."  *Id.*  As the Complaint fails to sufficiently allege reliance, it therefore fails to sufficiently allege transaction causation.  *See supra* IV.C.

Loss causation, in turn, represents "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."  *Lentell*, 396 F.3d at 172 (quoting *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)).  "Thus to establish loss causation, 'a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered'"—"*i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  *Id.* at 172–73 (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis in original)).  Plaintiffs can demonstrate loss causation through a

variety of means, but fundamentally must plead "facts which, if proven, would show that [their] loss[es] [were] caused by the alleged misstatements *as opposed to intervening events*." *Id.* at 174 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)) (emphasis added).

Plaintiff's Complaint asserts only that Plaintiff "suffered damages in the amount of the purchase price for their 2020 Notes" "[a]s a result of Defendants' false and/or misleading statements and/or omissions of materials [sic] facts," ¶ 111, and "[a]s a result of Defendants' fraudulent scheme." ¶¶ 116, 123. Plaintiff generally alleges owning the bonds, ¶ 15, but fails to allege with particularity how Plaintiff acquired the bonds, the date or dates on which Plaintiff acquired them, for what price, *see, e.g.*, ¶ 49 ("deciding to participate in the 2016 Exchange Offer and/or purchase the 2020 Notes in the primary or secondary market"), or even whether it was exposed to any of the alleged misstatements. The Complaint also does not connect Defendants' alleged misstatements and omissions to a complete decline in value of Plaintiff's interest in the 2020 Notes. Nor could Plaintiff, because—as pled—Defendants' litigation over the validity of the Exchange Offer and the 2020 Notes is ongoing. ¶¶ 7–11, 90–95.

Until there is a resolution to Defendants' parallel litigation, there is no possible way for Plaintiff to differentiate any loss that may be attributable to any alleged fraud from any loss that may be attributable to the market's reaction to breach of contract claims embodied in a judgment that may be upended on appeal.[16] *See* ¶¶ 86-87 (alleging Defendants' "failed to pay" principal and interest "due under the 2020 Notes"). The same holds true for the many other intervening causes of any potential loss, including general decline in oil and gas prices—a risk disclosed in the

---

[16] For the avoidance of doubt, Defendants do not concede, admit, or in any way acknowledge that they breached any contractual provisions.

Offering Circular, ¶ 47, and the National Assembly's consistent rejection of the Exchange Offer as contemplated, ¶¶ 38, 83.

Lastly, Plaintiff further fails to allege when it may have acquired its interests in the 2020 Notes, much less when Plaintiff realized any loss. Without any transaction dates, there is no way for the Court to assess whether Plaintiff suffered any losses or whether those purported losses were caused by Defendants' alleged fraud or some other market event that may have caused a decline in the price of the 2020 Notes, as well as what statements Plaintiff might have relied upon, if any. The claim should be dismissed. *See Lentell*, 396 F.3d at 175.

E.   Plaintiff Fails to Plead "Scheme" Liability

To the extent Plaintiff is attempting to allege "scheme liability" under subsections (a) and (c) of Rule 10b-5, the claim fails. Plaintiff does not specifically identify whether it is even pursuing a claim under subsections (a) and (c), but "[c]ourts rightly insist that a plaintiff who intends to bring a Rule 10b-5 claim based on both misstatement and scheme liability must do so clearly and specifically." *In re Teva Secs. Litig.*, 512 F. Supp. 3d 321, 337 (D. Conn. 2021).

"To state a scheme liability claim, a plaintiff must show: (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (citation omitted). This includes "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Id.* (citation omitted).

Plaintiff fails to plead any deceptive or manipulative acts beyond the alleged misstatements or omissions. *See SEC v. Rio Tinto PLC*, 41 F. 4th 47, 54 (2d Cir. 2022) ("[A]n actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination.") (emphasis in original). Although Plaintiff refers to "an ongoing scheme to

24

prevent the transfer of collateral underlying the 2020 Notes" by engaging with the U.S. Department of the Treasury ("U.S. Treasury") and the Office of Foreign Assets Control ("OFAC"), ¶ 12; *see also* ¶¶ 84, 85, and by making filings in the *Crystallex* litigation, ¶¶ 96, 97, 100, Plaintiff never alleges how this conduct was deceptive or manipulative, the effect this conduct had on Plaintiff, or even how or that conduct "occurred in connection with the purchase or sale of a security." *Bai v. Tegs Mgmt., LLC*, No. 20-cv-4942, 2022 WL 602711, at *6 (S.D.N.Y. Mar. 1, 2022) (Cote, J.) (quoting *Plumber & Steamfitters Loc. 773 Pension Fund*, 11 F.4th at 105).

In any event, Plaintiff's scheme liability claims are time-barred for the reasons articulated in Part III. *Id.* at *7–8.

F.   Plaintiff's Common Law Fraud Claim (Count 1) Fails for the Same Reason as the Section 10(b) and Rule 10b-5 Claim (Count 3)

The elements of common law fraud under New York law are "substantially identical to those governing § 10(b), [an] identical analysis applies." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 195 (S.D.N.Y. July 20, 2006) (citation omitted).  Because Plaintiff's Section 10(b) claims fail as a matter of law, Plaintiff's common law fraud claims based on the same facts fail as well.  *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (generally, "when the federal claims are dismissed, the state claims should be dismissed as well") (citation omitted).

V.   **Plaintiff's Fraud Claims That Rely Upon Defendants' Petitions To The U.S. Government Are Barred**

As relevant to at least any scheme liability theory under Counts 1, 3, 4, as well as any other of Plaintiff's putative claims centered on Defendants' engagement in litigation, lobbying efforts, and other activity directly related to Defendants' efforts to influence U.S. Government policy, Plaintiff's claims are barred.  Under First Amendment principles, activities designed to influence

governmental action, including petitions and filings with both the Executive and Judicial Branches, are generally immunized from liability.  *See Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18 (2d Cir. 1980); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669–70 (1965).

Here, *Noerr-Pennington* immunity protects *all* of Defendants' "discussions" with the U.S. Treasury and OFAC.  *See* ¶¶ 12, 72, 84–85, 97, 108, 113, 115, 120, 122.  Indeed, courts routinely apply *Noerr-Pennington* immunity to efforts to influence the Executive Branch.  *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (applying immunity to efforts to influence the executive branches of governments); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 893, 896 (10th Cir. 2011) (Superintendent of Insurance); *Assigned Container Ship Claims, Inc. v. Am. President Lines, Ltd.*, 784 F.2d 1420, 1421 (9th Cir. 1986) (Federal Maritime Administration); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 120–23  (3d Cir. 1999) (U.S. International Trade Commission and the Department of Commerce).

The same principle applies to Plaintiff's allegations that Defendants' fraud is evidenced in the "filing" and advancement of "frivolous" litigation in relation to creditor proceedings in the Declaratory Judgment Action and in the District of Delaware.  *See* ¶¶ 13, 96–100, 108, 113, 115, 117, 120, 122, 124, 126–35. [17]  The fact that petitioning may take place via the Judiciary does not

---

[17] While Plaintiff discusses *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.* ("*Crystallex*") No. 17-mc-00151-LPS (D. Del. May 4, 2022), ¶¶ 96–100, the Complaint does not allege that any of the statements made in *Crystallex* were frivolous, fraudulent, or induced Plaintiff's reliance.  Even if Plaintiff did so allege, the PDVSA Parties' litigation positions in *Crystallex* have no bearing on the 2020 Notes and no bondholders are a party in that action.  As a result, no reasonable bondholder could rely on unrelated statements in *Crystallex* to make decisions regarding their 2020 Notes. Regardless, there has been no suggestion in *Crystallex*, nor could there be, that any statements made by the PDVSA Parties in that action were not made in good faith.

remove it from *Noerr-Pennington* immunity.  *See United Mine Workers of Am.*, 381 U.S. at 669–70; *Cal. Motor Transp.*, 404 U.S. at 510.[18]

Lastly, even if *Noerr-Pennington* immunity did not apply, Defendants' participation in the Declaratory Judgment Action and in *Crystallex* is protected from liability pursuant to the official proceedings immunity.  "[S]tatements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, . . . so long as they are material and pertinent to the issue to be resolved in the proceeding."  *Lipin v. Hunt*, No. 14-cv-1081, 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015); *Assoun v. Assoun*, No. 14-cv-1368, 2015 WL 110106, at *8 (S.D.N.Y. Jan. 7, 2015); *see also Gottwald v. Sebert*, Nos. 32 & 33, 2023 WL 3959051, at *3 (N.Y. June 13, 2023).  Accordingly, Plaintiff's allegations that Defendants pursued their fraudulent scheme by putting forth "frivolous legal arguments" in litigation fail.  *See, e.g.*, ¶¶ 13, 96–100, 108, 113, 115, 117, 120, 122, 124, 126–35; *Lipin*, 2015 WL 1344406, at *8.

## VI.   Plaintiff Fails To Plead Aiding And Abetting Fraud

To state a claim for aiding and abetting a fraud, a plaintiff must allege (1) existence of an underlying fraud; (2) actual knowledge of the fraud; and (3) substantial assistance in the fraud. *Gross v. Chambre*, No. 031761/2015, 2017 WL 8729048, at *3 (N.Y. Sup. Ct. Apr. 6, 2017).  "It is insufficient to merely raise allegations sufficient to state a claim against the principal participants

---

[18] Plaintiff's fraud allegations do not defeat the application of *Noerr-Pennington* immunity under the so-called "sham exception"—if they did, every plaintiff could erode First Amendment protections by adding a fraud claim to its complaint.  *See Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004).  Further, the exception does not apply outside of the adjudicatory context—and therefore the immunity is applicable to any "soliciting" of OFAC.  *See, e.g.*, ¶ 108; *Friends of Rockland Shelter Animals*, 313 F. Supp. 2d at 343 ("Fraudulent acts are not protected by the *Noerr–Pennington* doctrine when they occur in the adjudicatory process.").  Regardless, the Court in *Crystallex* certified Defendants' arguments for interlocutory appeal and found there were "substantial grounds for difference of opinion"—a far cry from a sham.  *See Crystallex*, ECF No. 463 at 4–5; *see also* Declaratory Judgment Action, at ECF No. 215 at 65.

for fraud and combine conclusory allegations that the aider and abettor had actual knowledge of the fraud." *Id.*

For the reasons set forth in Part IV and Part V, Plaintiff has not alleged predicate fraud. Plaintiffs' aiding and abetting claims thus must be dismissed. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 186–87 (S.D.N.Y. 2009). In addition, as relevant to the Section 10(b) and Rule 10b-5 claims, private civil liability does not extend to those who merely aid and abet a Section 10(b) violation. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 177 (1994); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 151 n.22 (2d Cir. 2015). Finally, the Complaint impermissibly group pleads the claim against all the Defendants collectively, without differentiating how each allegedly aided and abetted the others. ¶¶ 136–139.

## VII.    Plaintiff's Alternative Common Law Fraud Claim Is Baseless And Must Be Dismissed

Plaintiff alleges in Count 4 that Defendants' statements made "in sworn court filings" were themselves fraudulent. ¶¶ 126–135. Plaintiff's theory has no basis in law.

*First*, Plaintiff fails to plead any facts that could support reliance on these statements. It is axiomatic that "an adversarial relationship negates as a matter of law any inference that sophisticated business people are relying on their adversary's representation." *Bd. of Managers of 325 Fifth Ave. Condo. v. Cont'l Residential Holdings LLC*, 149 A.D.3d 472, 474 (N.Y. App. Div. 1st Dep't 2017) (cleaned up). Here, Plaintiff freely admits these statements were made "in sworn court filings and other public documents" as Defendants pursued the Declaratory Judgment Action against the Trustee and the Collateral Agent of the 2020 Notes. ¶ 129; *see also* ¶¶ 7–11, 90–95. The Trustee and Collateral Agent act as the representatives of the beneficial holders of the 2020 Notes in any litigation against Defendants. *See, e.g.*, Broughel Decl. Ex. 2, Indenture § 5.01(h); Broughel Decl. Ex. 3, Pledge Agreement at 1. Defendants were therefore in an adversarial

relationship with Plaintiff at the time these statements were made and Plaintiff cannot therefore rely on these statements as a matter of law.

*Second*, Plaintiff fails to establish scienter.  Plaintiff does not explain how Defendants' alleged conduct, in announcing publicly to the world they now believe the Exchange Offer and 2020 Notes to be invalid under the Venezuelan Constitution, is somehow indicative of an intent to deceive.  Plaintiff does not assert, for instance, any facts suggesting Defendants will "benefit[] in a concrete and personal way from [this] purported fraud." *Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 261 (S.D.N.Y. 2000).  Plaintiff does not assert any facts that show Defendants, in making these statements, "engaged in deliberately illegal behavior." *Id.*  Plaintiff does not assert any facts to suggest Defendants "knew facts or had access to information suggesting that [these] public statements were not accurate." *Id.*  And Plaintiff does not assert any facts that suggest Defendants, in making these statements "failed to check information they had a duty to monitor." *Id.*

## VIII.   Plaintiff's Declaratory Judgment Claim Should Be Dismissed

The declaratory judgment claim cannot survive dismissal.  "Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, 'the first suit should have priority,' and the later-filed suit should be dismissed." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-cv-8751, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)).  While the "claims, parties, and available relief must not significantly differ between the actions . . . the issues need not be identical, and the named parties need not be entirely the same provided that they represent the same interests." *Id.* (citation omitted).

Plaintiff seeks a declaratory judgment that "[u]nder Venezuelan law, the 2020 Notes are not 'contracts of national interest' requiring National Assembly approval."  ¶ 143.  But Plaintiff

concedes there are parallel proceedings related to this exact question currently on appeal with the Second Circuit.   ¶¶ 7–11, 90–95.   Moreover, the Trustee and Collateral Agent are plainly representing Plaintiff's interests under the 2020 Notes in Defendants' parallel proceedings.   In light of this, it would be a waste of resources for this Court to hear the declaratory judgment claim, where there is a pending suit with the very same issues.   *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (recognizing it is "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in [another] court presenting the same issues, not governed by federal law, between the same parties") (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)); ECF No. 6 at 2 (acknowledging fact and expert discovery on issue already occurred in Declaratory Judgment Action).

This Court may exercise its discretion to dismiss a declaratory judgment claim where warranted under the totality of the circumstances.   *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023).   The applicable *Admiral* factors—including concerns of judicial efficiency and whether the remedy is being used for "procedural fencing" as it is here where a prior action exists—favor against this Court exercising jurisdiction over Plaintiff's declaratory judgment claim.

## **CONCLUSION**

For the reasons discussed above, Defendants respectfully submit that the Complaint should be dismissed with prejudice.

Dated: October 4, 2023
New York, New York

**PAUL HASTINGS LLP**

 *s/ Kurt W. Hansson*
Kurt W. Hansson
Kevin P. Broughel
James L. Ferguson
Zoe Lo
Zachary D. Melvin
200 Park Avenue
New York, New York 10166
Telephone: 212-318-6000
Facsimile: 212-319-4090
kurthansson@paulhastings.com
kevinbroughel@paulhastings.com
jamesferguson@paulhastings.com
zoelo@paulhastings.com
zacharymelvin@paulhastings.com

*Counsel for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo, S.A.*

**WILLKIE FARR & GALLAGHER LLP**

 *s/ Jeffrey B. Korn*
Jeffrey B. Korn
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
jkorn@willkie.com

Michael J. Gottlieb*
Kristin E. Bender†
1875 K Street, NW
Washington, DC 20006
Telephone: 202-303-1000
Facsimile: 202-303-2000
mgottlieb@willkie.com
kbender@willkie.com

Nicholas Reddick†
One Front Street, 34th Floor
San Francisco, California 94111
Telephone: 415-858-7400
Facsimile: 415-858-7599

nreddick@willkie.com

*\* Admitted Pro Hac Vice*
*† Pro Hac Vice Forthcoming*

*Counsel for Defendant PDV Holding, Inc.*