**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VR GLOBAL PARTNERS, L.P.,<br><br>               Plaintiff,<br><br>       -against-<br><br>PETRÓLEOS DE VENEZUELA, S.A.,<br>PDVSA PETRÓLEO, S.A., and PDV<br>HOLDING, INC.,<br><br>            Defendants. | Case No. 1:23-cv-05604-DLC<br><br>**ORAL ARGUMENT REQUESTED** |

**<u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR</u>**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ...............................................................................3

    A.   PDVSA Entities and the 2020 Notes ...............................................3

    B.   Circumstances Surrounding the Exchange Offer............................4

    C.   Appointment and Recognition of Guaidó as Interim President.............6

    D.   Declaratory Judgment Action ........................................................6

STANDARD OF REVIEW .................................................................................7

ARGUMENT .......................................................................................................8

    I.   **Plaintiff's Securities Claims Are Barred by *Morrison***...............8

        A.   The 2020 Notes Are Not Listed on a U.S. Exchange ..................9

        B.   Plaintiff Fails to Allege the Transactions Occurred Within the United States ................................................................................9

        C.   Plaintiff Fails to Establish Its Claims Are Not "Predominantly Foreign" ....................................................................................11

    II.   **Plaintiff's Section 10(b), Common Law Fraud, and Aiding and Abetting Fraud Claims Are Time Barred** .........................................13

    III.   **Plaintiff Fails to State a Claim Under Section 10(b) and Rule 10b-5(a) and (c)**..............................................................................................16

        A.   Plaintiff Cannot Recast Its Breach of Contract Grievance as Fraud..........16

        B.   Plaintiff Fails to Plead a Deceptive or Manipulative Act .........18

        C.   Plaintiff Fails to Plead a Strong Inference of Scienter.............20

        D.   Plaintiff Fails to Plead Reasonable Reliance and Cannot Rely on the Fraud-On-The Market Doctrine ............................................23

        E.   Plaintiff Fails to Plead Causation................................................25

        F.   Plaintiff's Common Law Fraud Claim (Count 2) Fails for the Same Reason as the Section 10(b) and Rule 10b-5 Claim (Count 1)................27

    IV.   **Plaintiff's Fraud Claims That Rely Upon Defendants' Petitions to the U.S. Government Are Barred** ...........................................................28

    V.   **Plaintiff Fails to Plead Aiding and Abetting Fraud**...........................29

    VI.   **Plaintiff's Alternative Common Law Fraud Claim Is Baseless and Must Be Dismissed** .............................................................................30

CONCLUSION ..................................................................................................30

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)...........................................................................9, 10, 11

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009)..................................................................29

*In re Adelphia Comm. Corp. Secs. Derivative Litig.*,
  2005 WL 1679540 (S.D.N.Y. July 18, 2005) .......................................................13

*Africa v. Jianpu Tech. Inc.*,
  2022 WL 4537973 (S.D.N.Y. Sept. 28, 2022).......................................................18

*Arco Cap. Corps. Ltd. v. Deutsche Bank AG*,
  949 F. Supp. 2d. 532 (S.D.N.Y. 2013).................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................8

*Ashland Inc. v. Morgan Stanley & Co.*,
  652 F.3d 333 (2d Cir. 2011).................................................................................23

*Assigned Container Ship Claims, Inc. v. Am. President Lines, Ltd.*,
  784 F.2d 1420 (9th Cir. 1986) .............................................................................28

*Astroworks, Inc. v. Astroexhibit, Inc.*,
  257 F. Supp. 2d 609 (S.D.N.Y. 2003)..................................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)........................................................................8, 21, 22

*Bai v. TEGS Mgmt., LLC*,
  2022 WL 602711 (S.D.N.Y. Mar. 1, 2022) (Cote, J.) .....................................14, 19

*Banco Safra, S.A.-Cayman Islands Branch v. Samarco Mineração S.A.*,
  849 F. App'x 289 (2d Cir. Mar. 4, 2021).........................................................5, 9, 10

*Bd. of Managers of 325 Fifth Ave. Condo. v. Cont'l Residential Holdings LLC*,
  149 A.D.3d 472 (N.Y. App. Div. 1st Dep't 2017)............................................11, 30

*In re Bear Stearns Cos., Sec., Derivative, and ERISA Litig.*,
  995 F. Supp. 2d 291 (S.D.N.Y. Feb. 5, 2014)......................................................13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................7, 8

*Biofrontera AG v. Deutsche Balaton AG,*
    2020 WL 1489788 (S.D.N.Y. Mar. 27, 2020) ..........................................................9

*Brass v. Am. Film Techs., Inc.,*
    987 F.2d 142 (2d Cir. 1993)..................................................................................3

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
    98 F.3d 13 (2d Cir. 1996) ...................................................................................17

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972)......................................................................................28, 29

*Cascardo v. Stacchini,*
    100 A.D.3d 675 (N.Y. App. Div. 2d Dep't 2012) .................................................24

*Cavello Bay Reinsurance Ltd. v. Stein,*
    2020 WL 1445713 (S.D.N.Y. Mar. 25, 2020),
    *aff'd*, 986 F.3d 161 (2d Cir. 2021) ......................................................................12

*Cavello Bay Reinsurance Ltd. v. Stein,*
    986 F.3d 161 (2d Cir. 2021)................................................................................12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.,*
    511 U.S. 164 (1994)...........................................................................................29

*CFTC v. Gorman,*
    2023 WL 2632111 (S.D.N.Y. Mar. 24, 2023) ......................................................11

*Cheminor Drugs, Ltd. v. Ethyl Corp.,*
    168 F.3d 119 (3d Cir. 1999).................................................................................28

*Coll v. First Am. Title Ins. Co.,*
    642 F.3d 876 (10th Cir. 2011) .............................................................................28

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.,*
    No. 17-mc-00151-LPS (D. Del. May 4, 2022) ........................................18, 28, 29

*CSI Inv. Partners II, L.P. v. Cendant Corp.,*
    180 F. Supp. 2d 444 (S.D.N.Y. 2001).................................................................17

*Diesenhouse v. Soc. Learning & Payments, Inc.,*
    2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022)....................................................8, 22

*In re Dynagas LNG Partners LP Sec. Litig.,*
    504 F. Supp. 3d 289 (S.D.N.Y. 2020)..................................................................20

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..........................................................................................21

*Elliott Assocs. v. Porsche Automobil Holding SE*,
   759 F. Supp. 2d 469 (S.D.N.Y. 2010),
   *aff'd sub nom. Parkcentral*, 763 F.3d 198 ................................................................10

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994)...........................................................................10, 21, 23, 30

*Gabriel Cap., L.P. v. Natwest Fin., Inc.*,
   137 F. Supp. 2d 251 (S.D.N.Y. 2000).........................................................................30

*Gebhardt v. Allspect, Inc.*,
   96 F. Supp. 2d 331 (S.D.N.Y. 2000)............................................................................8

*Gross v. Chambre*,
   2017 WL 8729048 (N.Y. Sup. Ct. Apr. 6, 2017)........................................................29

*In re Integrated Res. Real Estate*,
   815 F. Supp. 620 (S.D.N.Y. 1993)..............................................................................13

JBC Holdings NY, LLC v. Pakter,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013).........................................................................28

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ch. 2019)...............................................................................20, 23

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).........................................................................................21

*In re Kingate Mgmt. Ltd. Litig.*,
   784 F.3d 128 (2d Cir. 2015).........................................................................................29

*Kottler v. Deutsche Bank AG*,
   607 F. Supp. 2d 447 (S.D.N.Y. 2009).........................................................................16

*Lentell v. Merrill Lynch Co.*,
   396 F.3d 161 (2d Cir. 2005)...........................................................................25, 26, 27

*Lipin v. Hunt*,
   2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015) ............................................................29

*Liu v. Intercept Pharms., Inc.*,
   2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ............................................................21

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).........................................................................23

*Loginovskaya v. Batrachenko*,
    764 F.3d 266 (2d Cir. 2014) ............................................................................... 11

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) ....................................................................................... 19

*Lutin v. N.J. Steel Corp.*,
    1996 WL 636037 (S.D.N.Y. Nov. 1, 1996) ........................................................ 23

*Marathon Structured Fin. Fund, LP v. Paramount Pictures Corp.*,
    622 F. App'x 85 (2d Cir. 2015) .......................................................................... 27

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
    747 F. Supp. 2d 406 (S.D.N.Y. 2010) ................................................................ 27

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998) (per curiam) ............................................................ 27

*Mills v. Polar Molec. Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ............................................................................... 17

*Mindspirit, LLC v. Evalueserve Ltd.*,
    2016 WL 11707410 (S.D.N.Y. Sept. 26, 2016) .................................................. 22

*Miracle Mile Assocs. v. City of Rochester*,
    617 F.2d 18 (2d Cir. 1980) ................................................................................. 28

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................... 1, 8, 9, 10

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ............................................................................... 19

*Papa's–June Music, Inc. v. McLean*,
    921 F. Supp. 1154 (S.D.N.Y. 1996) ................................................................... 17

*Parkcentral Global Hub Ltd. v. Porsche Auto Holdings S.E.*,
    763 F.3d 198 (2d Cir. 2014) ............................................................................. 9, 11

*In re Parmalat Sec. Litig.*,
    375 F.Supp.2d 278 (S.D.N.Y. 2005) .................................................................. 25

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. July 20, 2006) .................................................. 27

*In re Petrobras Secs. Litig.*,
    150 F. Supp. 3d 337 (S.D.N.Y. 2015) ................................................................ 11

*Petróleos de Venezuela, et al. v. MUFG Union Bank, N.A., et al.*,
  19-cv-10023-KPF (S.D.N.Y.) ........................................................................... *passim*

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ................................................................................16

*Plumbers' Union Local No. 12 v. Swiss Reins. Co.*,
  753 F. Supp. 2d 166 (S.D.N.Y. 2010)................................................................10

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013)................................................................................13

*In re Qudian Inc. Sec. Litig.*,
  2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ...................................................24

*Scherer v. Gaildon Med. Sys., Inc.*,
  2004 WL 2884312 (S.D.N.Y. Dec. 10, 2004) ....................................................14

*SEC v. Kelly*,
  817 F. Supp. 2d 340 (S.D.N.Y. 2011)...........................................................18, 19

*SEC v. Rio Tinto*
  *plc*, 41 F.4th 47 (2d Cir. 2022).........................................................................18

*Silsby v. Ichan*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)..................................................................21

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014)....................................................................8

*Stolow v. Greg Manning Auctions Inc.*,
  258 F. Supp. 2d 236 (S.D.N.Y. 2003), *aff'd*, 80 F. App'x 722 (2d Cir. 2003)........15

*Stone v. Sutton View Cap., LLC*,
  2017 WL 6311692 (S.D.N.Y. Dec. 8, 2017) ..................................................24, 25

*Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008)..............................................................................25

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
  450 Fed. App'x 32 (2d Cir. 2011).......................................................................23

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022).................................................................19

*United Mine Workers of Am. v. Pennington*,
  381 U.S. 657 (1965)...................................................................................28, 29

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011) .................................................................................11

*White v. H&R Block, Inc.*,
    2004 WL 1698628 (S.D.N.Y. July 28, 2004) ......................................................................25

*Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*,
    479 F. Supp. 2d 388 (S.D.N.Y. 2007)..................................................................................10

**Statutes**

15 U.S.C. §§ 78u-4(b)(1), (2) ...................................................................................................8

22 U.S.C. § 9702.......................................................................................................................6

**Other Authorities**

Ana Isabel Martinez and Corina Pons, *Venezuela's PDVSA offers $7 billion bond
    swap to ease debt burden*, Reuters (Sept. 13, 2016), available at
    https://www.reuters.com/article/us-venezuela-pdvsa-idUSKCN11J2E2 ................................5

Carolyn Cui, *Venezuela's PdVSA to Offer to Swap $7 Billion in Debt*, Wall St. J.
    (Sept. 14, 2016), available at https://www.wsj.com/articles/venezuelas-pdvsa-
    to-offer-to-swap-7-billion-in-debt-1473878226 ...................................................................5

Executive Order No. 13692 (Mar. 8, 2015).................................................................................5

Fed. R. Civ. P. 12(b)(6)...............................................................................................................7

National Assembly, *Resolution on the Respect of the Inherent Non-Transferable
    Powers of the*..........................................................................................................................6

State Dep't, Remarks at the Special Meeting of the OAS Permanent Council on
    Venezuela, Statements of Michael J. Fitzpatrick (June 21, 2016)............................................5

State Dep't, *Venezuela: Inclusion of All Parties a Key to Solving Challenges* (Feb.
    17, 2016) ................................................................................................................................5

U.S. Dep't of State, Venezuela's Interim Government and the 2015 National
    Assembly (Jan. 3, 2023), available at https://www.state.gov/venezuelas-
    interim-government-and-the-2015-national-assembly/ ...........................................................6

*Venezuela 2022 Human Rights Report*, U.S. Dep't of State (Mar. 20, 2023)................................6

Defendants Petróleos de Venezuela, S.A. ("PDVSA"), PDVSA Petróleo, S.A. ("PDVSA Petróleo"), and PDV Holding, Inc. ("PDVH") (collectively, "Defendants" or "PDVSA Parties") respectfully submit this brief in support of their motion to dismiss the Amended Complaint ("Complaint," ECF No. 35) by plaintiff VR Global Partners, L.P. ("VR Capital" or "Plaintiff").

## PRELIMINARY STATEMENT

This case is a misguided attempt to circumvent a separate defective lawsuit arising from the same 2016 securities exchange by PDVSA, Venezuela's national oil company, that has been pending for over four years and is now on appeal before the Second Circuit.

The premise of this case is that, when PDVSA issued the 2020 Notes, PDVSA harbored a secret belief that the 2020 Notes were invalid, illegal, and unenforceable because PDVSA was not authorized by the Venezuelan Constitution and Venezuelan National Assembly to issue the 2020 Notes in the first place. But this ignores reality. At the time of the Exchange in 2016, *the Maduro regime* controlled PDVSA and its U.S. subsidiaries. For the next three years, PDVSA paid principal and interest on the 2020 Notes. It was not until the National Assembly wrested control of the PDVSA Parties from Maduro in 2019 that they were able to challenge the Maduro regime's decision to issue the 2020 Notes and corresponding pledge of collateral without National Assembly approval—based on objections that the National Assembly *publicly* expressed in 2016 before the 2020 Notes were issued. That is not securities fraud in any sense of the term. Plaintiff might have a breach of contract claim—which the PDVSA Parties strongly dispute—but that claim has been elsewhere asserted on its behalf and on behalf of all 2020 Noteholders by their Trustee and Collateral Agent. This case should be dismissed for this and several other reasons.

As a threshold matter, Plaintiff's Section 10(b) claim is barred under the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, which restricts the extraterritorial application of the federal securities laws to securities on domestic exchanges or otherwise domestic securities

transactions.  Plaintiff fails to allege any facts about where it may have acquired its 2020 Notes.  Plaintiff's claims, based on statements allegedly made by a Venezuelan corporation in Venezuela about securities listed and traded on a foreign exchange and placed with a foreign bank, are also impermissibly foreign.  And to the extent that Plaintiff's claims purport to turn on Defendants' activities directed toward the U.S. Government, they are barred by the *Noerr-Pennington* doctrine.

Plaintiff's securities fraud and aiding and abetting fraud claims are also hopelessly untimely.  All of Plaintiff's key fraud allegations are from 2016, approximately seven years from the time Plaintiff decided to file its complaint in June 2023.  Whether measured by the five-year period for securities fraud claims or six-year period for common law fraud, Plaintiff is outside the statutes of repose and limitations.  Nor can Plaintiff credibly claim that the fraud was somehow hidden from it to toll the limitations period, or that alleged recent events somehow start the clock anew.  To the contrary, Plaintiff admits Defendants "laid bare their ongoing fraudulent scheme" no later than October 29, 2019, more than two years before its complaint was filed.

On the merits, Plaintiff fails to allege facts that would establish either causation or standing to bring this suit.  Plaintiff never pleads, as it must, how or exactly when it acquired the 2020 Notes, and for what price, mustering instead only the vague and insufficient allegation that it purchased the 2020 Notes in the primary or secondary market between August 2017 and January 2018.  Regardless, Plaintiff's allegations about how Defendants purportedly schemed to defraud Plaintiff are completely illogical.  Plaintiff asks this Court to accept the unreasonable scienter inference that Defendants deliberately hatched a scheme whereby it would pay Plaintiff principal and interest (*i.e.*, perform) on the 2020 Notes for *three full years* before revealing it never intended to honor the 2020 Notes.  This ignores the far more plausible and compelling inference that, in 2016, the *Maduro*-controlled PDVSA initiated the Exchange Offer asserting the 2020 Notes were

legal and only later, when the United States declared Maduro's presidency illegitimate and officially recognized the National Assembly that had consistently rejected the Exchange Offer and 2020 Notes including at their putative issuance, did PDVSA assert that the 2020 Notes were void *ab initio* and unenforceable.

Plaintiff also cannot plead reasonable reliance under the fraud-on-the-market doctrine or otherwise.  Even at the time of the Exchange Offer, the National Assembly had publicly passed a resolution categorically rejecting the Exchange Offer as unconstitutional, casting well-publicized public doubt on whether the 2020 Notes would be valid.  And Plaintiff's alternative fraud theory of liability, based on statements made by Defendants in their first-filed declaratory judgment action challenging the validity of the 2020 Notes, similarly fails for lack of reliance because representatives of the 2020 Noteholders like Plaintiff are adverse to Defendants in that proceeding.

At bottom, Plaintiff asks this Court to sustain a securities fraud complaint for a foreign securities issuance based on seven-year-old allegations resting on a purported *belief* as to the invalidity of securities, the risks of which were publicly disclosed and reported on at the time of the offering.  Under the heightened pleading standards of the PSLRA and Rule 9(b), such nonsensical claims should not be credited and the Complaint should be dismissed with prejudice.

## **FACTUAL BACKGROUND**[1]

A.    PDVSA Entities and the 2020 Notes

PDVSA is an oil and natural gas company established by the Venezuelan government in 1975 to control all operations relating to Venezuela's oil and natural gas reserves.  ¶ 27.[2]  It is

---

[1] In evaluating Rule 12(b)(6) motions, courts may consider "matters of which judicial notice may be taken, or  . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

[2] Paragraph citations are to the Complaint.

wholly owned by the Bolivarian Republic of Venezuela ("Venezuela").[3]  *Id.*  PDVSA owns both PDVSA Petróleo and PDVH.  ¶ 28.  PDVH owns 100% of the shares of CITGO Holding, Inc. ("CITGO Holding") (the "CITGO Shares"), which in turn owns 100% of the shares of CITGO Petroleum Company ("CITGO"), a U.S.-based oil refiner.  *Id.*

In April 2007, PDVSA issued $3 billion of notes due in April 2017.  ¶ 30.  In October 2010 and January 2011, PDVSA issued an additional $6.15 billion of senior notes due in November 2017 (together with the notes due in April 2017, the "2017 Notes").  *Id.*

On September 16, 2016, the Maduro-controlled PDVSA announced an exchange offer (the "Exchange Offer") to refinance the 2017 Notes for new notes maturing on October 27, 2020 (the "2020 Notes").  ¶ 38.  PDVSA also filed an offering circular and supplement on September 26, 2016 (the "Offering Circular"), Broughel Decl. Ex. 1.[4]  The 2020 Notes were governed by an Indenture, dated October 28, 2016 (the "Indenture"; Broughel Decl. Ex. 2), and secured by a Pledge Agreement, dated October 28, 2016 (the "Pledge Agreement"; Broughel Decl. Ex. 3). PDVSA Petróleo guaranteed both the 2017 and 2020 Notes.  ¶¶ 30, 47–49.  The 2020 Notes were secured by a pledge by PDVH of 50.1% CITGO Holding stock.  ¶ 41.  The 2020 Notes were listed on the Luxembourg Stock Exchange, traded on "the Euro MTF Market" of the Luxembourg Exchange, and were placed with Banco de Venezuela.  Broughel Decl. Ex. 1, Offering Circular at ii, 22.  Plaintiff allegedly owns $30,000,000 in original principal amount of the 2020 Notes.  ¶ 15.

B.   Circumstances Surrounding the Exchange Offer

Before the Exchange Offer, the U.S. Government issued numerous public statements declaring that the Maduro regime was undermining Venezuelan democracy and violating the

---

[3] PDVSA appears before this Court at the direction of the Ad-Hoc Board of PDVSA, appointed by the legitimate National Assembly government.  *See infra* at 6, III.B.

[4] "Broughel Decl." refers to the Declaration of Kevin P. Broughel, dated November 29, 2023, and exhibits attached thereto, filed in support of the Motion.

Venezuelan Constitution.[5]   On the day of the Exchange Offer, *Reuters* reported "[s]ome are concerned about potential political opposition to using Citgo shares [as collateral]" and that "[c]ritics in the opposition, which now controls the National Assembly, argue involving Citgo would constitute a de facto privatization of a state asset that requires parliamentary approval."[6] The next day, *The Wall Street Journal* noted "Venezuela's constitution requires the National Assembly to approve any new indebtedness of the republic."[7]

On September 27, 2016, the National Assembly adopted a resolution (the "September Resolution") that invoked its constitutional authority to oversee national public interest contracts and "reject[ed] categorically" the pledge of 50.1% of PDVH's CITGO Shares as collateral for the 2020 Notes.  ¶ 43.   The September Resolution condemned the transaction and called for an immediate investigation of the Maduro regime's misuse of PDVSA for political purposes.[8]  This resolution was preceded by another resolution issued by the National Assembly on May 26, 2016, declaring that for "contracts of national, state or municipal interest concluded by and between the National Executive and companies not domiciled in Venezuela, the Constitution categorically

---

[5] *See, e.g.*, Executive Order No. 13692 (Mar. 8, 2015) (Maduro regime engaged in "significant public corruption"); State Dep't, *Venezuela: Inclusion of All Parties a Key to Solving Challenges* (Feb. 17, 2016) (noting U.S. is "deeply concerned by decisions of the Venezuelan Supreme Court **limiting the authority of the recently elected National Assembly**, which have undermined Venezuelan democracy") (emphasis added); State Dep't, Remarks at the Special Meeting of the OAS Permanent Council on Venezuela, Statements of Michael J. Fitzpatrick (June 21, 2016) (expressing concern "the National Assembly **has not been allowed to carry out its rightful role**" and calling the Maduro regime to "***honor its own constitutional mechanisms***") (emphasis added).
[6] Ana Isabel Martinez and Corina Pons, *Venezuela's PDVSA offers $7 billion bond swap to ease debt burden*, Reuters (Sept. 13, 2016), available at https://www.reuters.com/article/us-venezuela-pdvsa-idUSKCN11J2E2.
[7] Carolyn Cui, *Venezuela's PdVSA to Offer to Swap $7 Billion in Debt*, Wall St. J. (Sept. 14, 2016), available at https://www.wsj.com/articles/venezuelas-pdvsa-to-offer-to-swap-7-billion-in-debt-1473878226.
[8] Bolivarian Republic of Venezuela National Assembly ("National Assembly"), *Resolutions on the Current Financial Situation of Petróleos de Venezuela, S.A.*, dated September 27, 2016 (translated), Broughel Decl. Ex. 4, September Resolution; ¶ 43.

mandates, without exception, the approval of the National Assembly" and that such approval is "a condition of the validity of the contract."[9]  The Maduro regime completed the Exchange Offer and issued the 2020 Notes on October 28, 2016.  ¶¶ 44–49.

C.   Appointment and Recognition of Guaidó as Interim President

On January 23, 2019, the National Assembly invoked the Venezuelan Constitution to declare Maduro's presidency illegitimate and name National Assembly President Juan Guaidó as the Interim President of Venezuela.[10]  The same day, the U.S. President declared the Maduro regime "illegitimate" and officially recognized "Guaidó, as the Interim President of Venezuela" and the National Assembly as the "only legitimate branch of government duly elected by the Venezuelan people."[11]  ¶ 77.  Guaidó subsequently appointed the PDVSA Ad-Hoc Board, which the National Assembly ratified.[12]  The United States continues to recognize the National Assembly as the only legitimate democratically elected body of Venezuela.  See 22 U.S.C. § 9702.[13]

D.   Declaratory Judgment Action

In April 2019, when an interest payment on the 2020 Notes became due, the PDVSA Ad-Hoc Board made the interest payment under protest to protect the CITGO Shares.  ¶¶ 82, 88.  On October 15, 2019, the National Assembly passed a resolution "reiterat[ing] the invalidity of [the 2020 Notes]," reaffirming its earlier rejection of the pledged collateral and initiation of

---

[9] National Assembly, *Resolution on the Respect of the Inherent Non-Transferable Powers of the National Assembly on Contracts of Public Interest*, dated May 26, 2016 (translated), Broughel Decl. Ex. 5, May 2016 Resolution.

[10] *Venezuela 2022 Human Rights Report*, U.S. Dep't of State, at 34 (Mar. 20, 2023).

[11] *Statement from President Donald Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela*, U.S. Dep't of Archives (Jan. 23, 2019).

[12] National Assembly, *Agreement Authorizing the Appointment to Hold Positions for an Intervention Entity, Named "Ad-Hoc Administrative Board,"* dated February, 13, 2019 (translated); Broughel Decl. Ex. 6, Ad-Hoc Agreement.

[13] *See also* U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), available at https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

investigations for alleged crimes derived from the 2020 Notes transaction, and ratifying that the Indenture was invalid under the Venezuelan Constitution.[14]   PDVSA thereafter did not pay additional principal or interest due on the 2020 Notes.  ¶¶ 93, 94.

On October 29, 2019, the PDVSA Parties filed an action against the Trustee and Collateral Agent seeking a declaration as to the invalidity of the 2020 Notes because they were "contracts of national interest" requiring National Assembly approval—which the National Assembly did not provide but instead "reject[ed] categorically."   ¶¶ 43, 97, 98; *Petróleos de Venezuela, et al. v. MUFG Union Bank, N.A., et al.*, 19-cv-10023-KPF (S.D.N.Y.) (the "Declaratory Judgment Action").  The Trustee and Collateral Agent, who purport to represent all bondholders—including Plaintiff—brought counterclaims against the PDVSA Parties for breach of contract, declaratory judgment, unjust enrichment, and *quantum meruit*.  ¶  99.  On June 10, 2020, the parties moved for summary judgment on a subset of these claims, including the Venezuelan law issues.  ¶ 100.  The Court granted the Trustee and Collateral Agent's motion for summary judgment on October 16, 2020, on the grounds that New York law applied to the 2020 Notes, and that, under New York law, the 2020 Notes were valid and enforceable.  *Id.*  The PDVSA Parties appealed. *See* Case Nos. 20-3858, 20-4127 (2d Cir. 2020).  The Second Circuit certified questions of law to the New York Court of Appeals on October 13, 2022.  *See* Case No. 20-3858, Dkt. 324 (2d Cir. Oct. 13, 2022).  Oral argument before the New York Court of Appeals is scheduled for January 10, 2024.

## STANDARD OF REVIEW

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Federal Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To prevail, plaintiffs must go beyond the

---

[14] National Assembly, *Resolution that Reiterates the Invalidity of PDVSA's 2020 Bonds*, dated October 15, 2019 (translated); Broughel Decl. Ex. 7, October Resolution.

"speculative level," *id.* at 555, and must do more than plead "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff alleging fraud must also satisfy the heightened pleading requirements of Rule 9(b). *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 423–24 (S.D.N.Y. 2014). These require that a plaintiff: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at *7 (S.D.N.Y. Aug. 3, 2022).

In addition, "private securities fraud actions must . . . meet the PSLRA's pleading requirements or face dismissal." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The PSLRA requires that a plaintiff (1) "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief . . . state with particularity all facts on which that belief is formed," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2).

## ARGUMENT

### I.     Plaintiff's Securities Claims Are Barred by *Morrison*

Plaintiff's Section 10(b) and Rule 10b-5(a) and (c) Exchange Act claim thereunder (Count 1) is barred by the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). In *Morrison*, the Supreme Court held that, under the presumption against extraterritoriality, Section 10(b) applies only to (1) "transactions in securities listed on domestic exchanges" and (2) "domestic transactions in other securities." 561 U.S. at 267. Even where

transactions are determined to be "domestic," Section 10(b) may still not apply under *Morrison* if the plaintiff's claims are "so predominantly foreign as to be impermissibly extraterritorial." *Parkcentral Global Hub Ltd. v. Porsche Auto Holdings S.E.*, 763 F.3d 198, 215–17 (2d Cir. 2014).

A.      The 2020 Notes Are Not Listed on a U.S. Exchange

The 2020 Notes were listed on the Luxembourg Stock Exchange, traded on "the Euro MTF Market" of the Luxembourg Exchange, and placed with Banco de Venezuela.  Broughel Decl. Ex. 1, Offering Circular at ii, 22.  The transactions alleged in Plaintiff's Complaint are therefore not domestic.  *See Biofrontera AG v. Deutsche Balaton AG*, 2020 WL 1489788, at *6–7 (S.D.N.Y. Mar. 27, 2020) (dismissing claims under *Morrison* for stock tender traded on a German Exchange).

B.      Plaintiff Fails to Allege the Transactions Occurred Within the United States

Plaintiff further fails to allege that its acquisition of any 2020 Notes constituted "domestic transactions in other securities."  A securities transaction not listed on a domestic exchange is considered "domestic" if the parties either: (1) incurred irrevocable liability to execute the transaction within the United States (for a purchaser, to take and pay for the underlying securities; for a seller, to deliver the underlying securities); or (2) transferred title to the underlying securities within the United States.  *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67–68 (2d Cir. 2012).  "[A] party's residency or citizenship is irrelevant to the location of a given transaction."  *Id*. at 70.  Conclusory allegations about the physical location of the transacting parties or their agents, the currency or bank accounts used, or the reporting of the transaction in the United States are insufficient to plead a "domestic transaction."  *Banco Safra, S.A.-Cayman Islands Branch v. Samarco Mineração S.A.*, 849 F. App'x 289 (2d Cir. Mar. 4, 2021) (summary order).

Plaintiff fails to allege any salient details of any transaction it may have entered into for the 2020 Notes.  The Complaint references the Exchange Offer, but not how Plaintiff allegedly acquired its 2020 Notes, from whom Plaintiff allegedly acquired them, and where title to Plaintiff's

2020 Notes was transferred. *See Elliott Assocs. v. Porsche Automobil Holding SE*, 759 F. Supp. 2d 469, 471, 476 (S.D.N.Y. 2010), *aff'd sub nom. Parkcentral*, 763 F.3d 198 (dismissing plaintiffs' § 10(b) claims for failing to demonstrate a domestic transaction). Indeed, Plaintiff's amended allegations notably persist in failing to state exactly how or where Plaintiff acquired its 2020 Notes. *See* ¶ 55 (stating only "Plaintiff . . . decid[ed] to participate in the 2016 Exchange Offer *and/or* purchase the 2020 Notes in the primary *or* secondary market") (emphasis added); *see also* ¶ 126.

Plaintiff pleads a hodgepodge of domestic-centric allegations to try and save its claim from *Morrison*, but none are pertinent to the domesticity inquiry, which focuses solely on the locus of the plaintiff's transactions. *See Absolute Activist*, 677 F.3d at 68-70 (the underlying security itself does not "have any bearing on whether a purchase or sale is domestic within the meaning of *Morrison*"). *First*, Plaintiff pleads it is a U.S. entity and that "significant holders" of the 2017 Notes were located and solicited in New York. ¶ 15. But "[a] purchaser's citizenship or residency does not affect where a transaction occurs." *Absolute Activist*, 677 F.3d at 69; *Plumbers' Union Local No. 12 v. Swiss Reins. Co.*, 753 F. Supp. 2d 166, 178 (S.D.N.Y. 2010) (same). *Second*, Plaintiff pleads the Governing Documents or their drafts were filed with the SEC. ¶ 33. But reporting transaction information to a U.S. regulatory body does not confer domesticity. *Banco Safra S.A.*, 849 F. App'x at 295 (summary order). *Third*, Plaintiff pleads the 2020 Notes are governed by New York choice-of-law provisions, and the 2017 Notes included a consent to New York jurisdiction and a sovereign immunity waiver. ¶¶ 2, 31, 54. But choice-of-law provisions and consents to New York jurisdiction "cannot be read to render wholly extraterritorial conduct territorial." *Arco Cap. Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 541 (S.D.N.Y. 2013); *Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 406 (S.D.N.Y. 2007). *Fourth*, the allegation that the Exchange Offer was negotiated in New York with

advisors in New York is irrelevant, as are the allegations that the Pledge Agreement and Indenture signature pages were allegedly exchanged in New York with payments thereunder to occur in New York. *See Loginovskaya v. Batrachenko,* 764 F.3d 266, 275 (2d Cir. 2014) ("[A]ctions needed to carry out the transactions, and not the transactions themselves . . . [are] insufficient to demonstrate a domestic transaction."); *Valentini v. Citigroup, Inc.,* 837 F. Supp. 2d 304, 323 (S.D.N.Y. 2011) ("*Morrison* is very clear [] that the reach of § 10(b) is determined by the location of the 'purchase or sale' itself, rather than by the location of activities that led up to and allowed that purchase or sale."). *Fifth,* Plaintiff's amended allegations invoke the New York situs of the depository for the Notes—DTC—and the Global Holder of the Notes—DTC's subsidiary, Cede & Co. *See* ¶¶ 40, 49. But this Court has stated the situs of DTC and its subsidiaries is immaterial to *Morrison's* domesticity inquiry. *See In re Petrobras Secs. Litig.,* 150 F. Supp. 3d 337, 342 (S.D.N.Y. 2015).

Plaintiff's pleading deficiencies are fatal. With no specific allegations "indicating that irrevocable liability was incurred or that title was transferred within the United States," *Absolute Activist,* 677 F.3d at 62, Count 1 requires dismissal.

### C.   Plaintiff Fails to Establish Its Claims Are Not "Predominantly Foreign"

Even if this Court were to find that the underlying transactions were domestic, Plaintiff's securities claim is so predominantly foreign that it still must be dismissed.[15]

In the Second Circuit, a domestic transaction is "necessary" but "not alone sufficient" to state a claim. *Parkcentral,* 763 F.3d at 215. Even with its amended allegations, Plaintiff fails to allege its securities claim is not "so predominantly foreign as to be impermissibly extraterritorial" to survive dismissal. *Id.* at 216; *see also CFTC v. Gorman,* 2023 WL 2632111, at *10–13

---

[15] Although the identity of the underlying security can speak to whether a claim survives *Parkcentral*'s "predominantly foreign" inquiry, it will not rescue the claim if the plaintiff did not also acquire the security in a domestic transaction.

(S.D.N.Y. Mar. 24, 2023) (dismissing fraud claims where issuer was Japanese and allegedly misstatements were made in Japan); *Cavello Bay Reinsurance Ltd. v. Stein*, 2020 WL 1445713, at *8–9 (S.D.N.Y. Mar. 25, 2020), *aff'd*, 986 F.3d 161 (2d Cir. 2021).

The allegations here are predominantly foreign.  PDVSA, the issuer of the 2020 Notes, is a Venezuelan corporation, "wholly owned by [] Venezuela" and "established by the Venezuelan government to coordinate, monitor, and control all operations relating to the country's oil and natural gas reserves."  ¶¶ 16, 22.  The issuer is thus not only foreign, but directly affiliated with the sovereign nation of Venezuela.  The 2020 Notes are also guaranteed by PDVSA Petróleo, a Venezuelan corporation with its principal place of business in Venezuela.  ¶¶ 16–17.  The only defendant entity affiliated with the U.S. is PDVH, but PDVH's only role in this transaction was to make the pledge on which the 2020 Notes were secured.  This alone cannot suffice.  *See, e.g.*, *Cavello Bay Reinsurance Ltd. v. Stein*, 986 F.3d 161, 167–68 (2d Cir. 2021) ("contingent and future" requirement that "triggers some U.S. interest" not enough to render a claim domestic).

In addition, the statements in the Complaint relate solely to Defendants' representations about their authorization to issue the 2020 Notes under a foreign legal document: the Venezuelan Constitution.  *See, e.g.*, ¶¶ 8, 50–68.  These statements were also primarily made in a foreign country, including the Offering Circular and certificates, all of which were signed by PDVSA representatives—each located and residing in Venezuela.  *See* Broughel Decl. Ex. 1, Offering Circular at 123–26 ("Unless otherwise indicated, the principal office for all of our directors and executive officers is located in Caracas, Venezuela.").  Moreover, the Offering Circular states that the 2020 Notes are not U.S. registered or regulated: "[t]he New Notes and the Guaranty have not been, and will not be, registered under the Securities Act or the securities of any state or other

jurisdiction of the United States and may not be offered or sold in the United States."  Broughel Decl. Ex 1, Offering Circular at ii.  The allegations are impermissibly extraterritorial.

## II.    Plaintiff's Section 10(b), Common Law Fraud, and Aiding and Abetting Fraud Claims Are Time Barred

Plaintiff's amended allegations further confirm that its fraud and aiding and abetting fraud claims are time barred under both Section 10(b) and common law fraud.  Claims under Section 10(b) are subject to a two-year statute of limitations and a five-year statute of repose.  *See In re Bear Stearns Cos., Sec., Derivative, and ERISA Litig.*, 995 F. Supp. 2d 291, 299 (S.D.N.Y. Feb. 5, 2014) (citing 28 U.S.C. § 1658 (b)).  "A statute of repose begins to run without interruption once the necessary triggering event has occurred, even if . . . the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."  *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 107 (2d Cir. 2013).

While Plaintiff still alludes to participating in the Exchange Offer (*see* ¶ 55), Plaintiff now newly alleges that it acquired its 2020 Notes sometime "between August 2017 and January 2018." ¶¶ 110, 126.  As a matter of pleading, this type of imprecise allegation is inadequate where the statute of limitation is at issue.  *See, e.g.*, *In re Integrated Res. Real Estate*, 815 F. Supp. 620, 641 (S.D.N.Y. 1993) ("This Court has directed that plaintiffs asserting securities fraud claims must, *inter alia*, plead with specificity the date of purchase of the securities at issue."); *In re Adelphia Comm. Corp. Secs. Derivative Litig.*, 2005 WL 1679540, at *10 (S.D.N.Y. July 18, 2005) (dismissing complaints for failure "to plead with specificity the date of relevant security purchases" and noting that pleading of "date ranges" for purchases was insufficient).

Regardless, Plaintiff's claims are untimely on their face.  By Plaintiff's own allegations, the latest possible date Plaintiff could have brought any of its claims was January 31, 2023—*i.e.*, five years after January 31, 2018, the last possible day it alleges it may have acquired its 2020

Notes.  *See Bai v. TEGS Mgmt., LLC*, 2022 WL 602711, at *7-8 (S.D.N.Y. Mar. 1, 2022) (Cote, J.) (cause of action accrues on date plaintiff purchased securities for purposes of Section 10(b) statute of repose).  The Complaint is therefore time barred.  *Id.*

Plaintiff attempts to plead around the limitations period by invoking Defendants' alleged maintenance of a fraudulent scheme, even going so far as to add allegations related to statements and legal arguments made as recently as 2023. *See, e.g.*, ¶ 115 (adding allegations related to statements and legal arguments made in 2019, 2020, and 2023), ¶ 122 (referencing misstatements after Defendants' 2019 lawsuit purportedly designed "to encourage others to believe that Defendants intended to abide by their obligations under the 2020 Notes when they had no intention to do so.").  But this cannot save Plaintiff's claim, as the scheme Plaintiff alleges "does not alter the determination that [its] causes of action under the Exchange Act . . . accrued" when it acquired its 2020 Notes between August 2017 and January 2018.  *See Bai*, 2022 WL 602711, at *7-8.  In short, the continuation of the alleged scheme "does not operate to extend the statute of repose" and the Section 10(b) claim must be dismissed.  *Id.*

The common law fraud claim is similarly time-barred.  The statute of limitations for fraud is "six years from the date of the commission of the fraud, or two years from the date the fraud was or could reasonably have been discovered, whichever is longer."  *See Scherer v. Gaildon Med. Sys., Inc*., 2004 WL 2884312, at *3 (S.D.N.Y. Dec. 10, 2004).  Plaintiff's fraud claim could only have accrued in late 2016—well over six years before June 29, 2023, the date of Plaintiff's initial complaint.  Plaintiff's fraud claim is premised on alleged misleading statements and omissions in documents and filings made in connection with the Exchange Offer in 2016.  Plaintiff points to statements in the Offering Circular and supplements filed on September 26, 2016, ¶¶ 2, 52–55, as well as alleged misstatements and omissions in the Indenture governing the 2020 Notes, executed

on October 28, 2016.  ¶¶ 56–58.  Plaintiff further premises its fraud claims on the Pledge Agreement, as well as certain "Officer, Incumbency, and Secretary Certificates," each of which were executed on October 28, 2016.  ¶¶ 59–61 (Pledge Agreement), ¶¶ 62–68 (Certificates). Finally, Plaintiff points to alleged misstatements made by PDVSA's legal counsel, Hogan Lovells, in September and October of 2016.  ¶¶ 72–74.  Whether measured by the six-year common law period, or the five-year statutory period, the statute of limitations or repose has run.

Plaintiff also cannot survive a statutory bar on grounds that any alleged fraud was discovered within two years of the filing of suit.  Defendants allegedly "defraud[ed] bondholders by inducing them to tender their 2017 Notes in exchange for 2020 Notes and/or purchase the 2020 Notes on the primary or secondary market, and then refusing to fulfill their repayment obligations under the 2020 Notes."  ¶ 52.  The alleged fraudulent action thus would have been discovered by 2020—when the bonds matured—more than two years prior to the Complaint filing.

Nor has Plaintiff plausibly alleged any facts to suggest any alleged fraud was concealed, or could not have been discovered until after 2021.  Plaintiff concedes that Defendants "*laid bare their ongoing fraudulent scheme*" on October 29, 2019, when Defendants filed the Declaratory Judgment Action.  ¶¶ 13, 97-98 (emphasis added).  The Complaint also alleges that PDVSA defaulted on the 2020 Notes on October 28, 2019.  ¶¶ 93-94.  Plaintiff's own pleading thus makes clear it knew Defendants' position on the 2020 Notes by October 2019 at the latest, foreclosing any argument that the alleged fraud went undetected until within two years of filing the initial complaint.  In sum, this is a textbook example of a plaintiff that has pleaded itself "out of court by alleging information that defeats [its] claim."  *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003), *aff'd*, 80 F. App'x 722 (2d Cir. 2003).

Lastly, because the fraud claims are time-barred, Plaintiff's aiding and abetting claim is likewise time-barred.  *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 461 (S.D.N.Y. 2009).

## III.   Plaintiff Fails to State a Claim Under Section 10(b) and Rule 10b-5(a) and (c)

Plaintiff's Complaint drops its Rule 10b-5(b) claim, and alleges only a Rule 10b-5(a) and (c) scheme liability claim.  "To state a scheme liability claim, a plaintiff must show: (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance."  *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (citation omitted).  This includes "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue."  *Id.*

Plaintiff's scheme liability claim hinges on its assertion that Defendants induced holders "to tender their 2017 Notes in exchange for 2020 Notes and/or purchase the 2020 Notes on the primary or secondary market, and then refus[e] to fulfill their [] obligations" thereunder.  ¶ 52; *see also* ¶ 12 ("Since the Exchange Offer, the PDVSA Parties have engaged in an ongoing scheme to prevent the transfer of the collateral underlying the 2020 Notes.").  In support, Plaintiff offers only (i) alleged misstatements made before the Exchange Offer that hid Defendants true "belief" that the 2020 Notes were invalid, (ii) allegations that Defendants made payments on the 2020 Notes for three full years, and (iii) Defendants' post-hoc efforts to prevent the transfer of collateral under the Pledge Agreement.  These allegations are insufficient to state a scheme liability claim under Section 10(b) and Rule 10b-5(a) and (c).

### A.   Plaintiff Cannot Recast Its Breach of Contract Grievance as Fraud

"An action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations."  *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d

609, 616 (S.D.N.Y. 2003) (citation omitted).  "[F]ailure to carry out a promise made in connection

with a securities transaction is . . . a breach of contract" that "does not constitute fraud unless,

*when the promise was made*, the defendant secretly intended not to perform or knew that he could

not …."  *Mills v. Polar Molec. Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (emphasis added).

Plaintiff's allegations boil down to the same core grievance—that the PDVSA Defendants

never intended to fulfill the promises purportedly made in the Governing Documents.  But this is

precisely what courts have indicated is insufficient to support a claim of fraud in New York.  *See*

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) ("[T]hese

facts amount to little more than intentionally-false statements by Beladino indicating his intent to

perform under the contract.  That is not sufficient to support a claim of fraud under New York

law."); *Papa's–June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing

fraud claim where the "fraud claim . . . merely appends allegations about [defendant's] state of

mind to the claim for breach of contract").[16]

That Plaintiff's claims arise in contract is made more obvious in that the Trustee and

Collateral Agent in the Declaratory Judgment Action—which represent interests of the

bondholders including Plaintiff's—brought several breach of contract claims (but no fraud claims)

that continue to be litigated when they were represented by the same counsel representing Plaintiff

here.  *See* Declaratory Judgment Action, ECF No. 40 ¶¶ 204–20; ECF No. 271.  Since Plaintiff's

claim is a contract grievance impermissibly recast as fraud, it should be dismissed.

---

[16] Plaintiff alleges that PDVSA's decision *to pay noteholders principal and interest* on the 2020 Notes was a continuation of its fraudulent scheme to hide its true intentions not to honor its obligations under the 2020 Notes.  ¶¶ 5, 79–82.  This position is nonsensical—if "the simple fact of nonperformance of a promise is insufficient to raise an inference of fraud," *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 180 F. Supp. 2d 444, 453 (S.D.N.Y. 2001), then *performance* of a contract is insufficient as well.

B.     Plaintiff Fails to Plead a Deceptive or Manipulative Act

Scheme liability "hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011).  In other words, "misstatements and omissions can form part of a scheme liability claim, but an actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination."  *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022).

Plaintiff fails to allege an "inherently deceptive" act independent from any alleged misstatements.  Plaintiff alleges Defendants conspired to induce purchases of 2020 Notes with no intention of honoring their obligations thereunder.  *See* ¶ 52.  To support this assertion, Plaintiff points to a series of alleged statements prior to the Exchange Offer, and certain statements made after the Maduro regime was declared illegitimate, that Plaintiff contends were either false or misrepresented Defendants' true beliefs about the validity of the 2020 Notes.  *See* ¶¶ 52, 54, 56-58, 62-64, 66-69, 73-74 (allege misstatements made prior to the Exchange Offer), 82-89, 101, 106, 115 (alleged misstatements made after the Maduro regime was declared illegitimate).  As a matter of law, these allegations alone cannot sustain a scheme liability claim.  *See SEC v. Rio Tinto plc*, 41 F.4d at 53 ("[M]isstatements and omissions cannot form the sole basis for liability under the scheme subsections.") (citation omitted); *Africa v. Jianpu Tech. Inc.*, 2022 WL 4537973, at *13 (S.D.N.Y. Sept. 28, 2022) (dismissing scheme liability claims where "underdeveloped claim" alleged only misstatements and omissions).

The only independent acts Plaintiff cites are allegations that Defendants (i) "perform[ed] their obligations" under the 2020 Notes, ¶¶ 79, 88, (ii) attempted to "prevent the transfer of collateral underlying the 2020 Notes," ¶ 12, by engaging with the U.S. Department of the Treasury ("U.S. Treasury") and the Office of Foreign Assets Control ("OFAC"), ¶¶ 12, 91, 92, and (iii) made defensive filings in the *Crystallex* litigation. ¶¶ 104, 105, 109.  Plaintiff never alleges how

this conduct was deceptive or manipulative, the effect this conduct had on Plaintiff, or even how or whether this conduct "occurred in connection with the purchase or sale of a security." *Bai*, 2022 WL 602711, at *6 (quotations omitted).  In any event, performing a contract as promised and exploring legal avenues to preserve one's control of pledged collateral hardly constitute the "inherently deceptive" conduct necessary to support a scheme liability claim.  *See Kelly*, 817 F. Supp. 2d at 344 (scheme liability claim dismissed where "the alleged round-trip transactions by AOL between 2000 and 2003 are deceptive only because of AOL's subsequent public misrepresentations" but there was "nothing inherently deceptive about structuring a transaction" in that manner). For this reason, there is no scheme liability adequately pled.

Lastly, to the extent Plaintiff seeks to plead scheme liability in part by tying the above independent acts to certain alleged misstatements and omissions in the Complaint, it fails insofar as many statements are not attributable to Defendants and were not disseminated by them.  Though a defendant does not need to be the "maker" of a statement to incur liability under Rules 10b-5(a) and 10b-5(c), *see Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2019), Plaintiff still must plead dissemination or "an inherently deceptive act that was distinct from an alleged misstatement." *In re Turquoise Hill Res. Ltd. Sec. Litig*., 625 F. Supp. 3d 164, 253 (S.D.N.Y. 2022).

Plaintiff refers to statements made by Venezuelan officials operating in their official government capacities.  In Paragraph 101, Plaintiff asserts that "On October 16, 2020, Guaidó, speaking on behalf of Defendants, stated that Judge Failla's ruling was a 'direct consequence of irresponsible debt policy' of the Maduro government," and that "the issuance of the 2020 Notes was 'absolutely fraudulent.'"  (emphasis added).  But Guaidó's full statement[17] lays bare that the

---

[17] "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations omitted).

statement was issued by "[t]he Legitimate Government of the Bolivarian Republic of Venezuela," ***not*** Defendants. Broughel Decl. Ex. 8. There is no allegation, nor could there be, that Defendants disseminated the statement or engaged in a deceptive act distinct from the alleged misstatement. Similarly, Plaintiff alleges several statements by José Ignacio Hernández[18] that were all made in his capacity as the Guaidó administration's Special Attorney General. *See* ¶ 115; *see also* ¶¶ 84, 86, 89. Again, none of these statements are alleged to have been disseminated by Defendants, or associated with any alleged deceptive acts.

Finally, Plaintiff's Complaint now includes a March 30, 2023 public statement purportedly from PDVSA that "[t]he issuer once again expressly states its willingness to comply with the obligations derived from the bonds." ¶ 106. This statement, however, was made and disseminated by the *Maduro-controlled* PDVSA, not the Defendant Ad-Hoc Board of PDVSA appointed by the legitimate National Assembly government which has been recognized as the only legitimate governing body of these entities for purposes of U.S. law. Broughel Decl. Ex. 9; *see also Jiménez v. Palacios*, 250 A.3d 814, 828-32 (Del. Ch. 2019). The Complaint fails to allege dissemination or other specific deceptive conduct in addition to these alleged misstatements, such that its scheme liability theory fails.

C.     Plaintiff Fails to Plead a Strong Inference of Scienter

"To state a claim under Section 10(b) . . . plaintiffs must plead facts to establish scienter." *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 309 (S.D.N.Y. 2020). "The standard to plead scienter . . . is higher than the familiar plausibility standard"—"a plaintiff must plead the factual basis which gives rise to a strong inference of fraudulent intent." *Id.* (cleaned up). A plaintiff can establish this "strong inference" of scienter by pleading, with particularity,

---

[18] Plaintiff confusingly refers to Mr. Hernández as a "Defendant Hernández." ¶ 115. Mr. Hernández is not a party to this action.

"facts to show either . . . that defendants had the motive and opportunity to commit fraud, or . . . strong circumstantial evidence of conscious misbehavior or recklessness." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged.'"  *ATSI*, 493 F.3d at 99 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)) (emphasis in original).  Here, the allegations fall far short of establishing a strong inference of scienter.

*First*, Plaintiff fails to allege motive and opportunity to commit fraud.  A complaint must allege defendants "benefitted in some concrete and personal way from the purported fraud." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 198 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000)).  The closest benefit alleged is a vague assertion that Defendants would "receive the benefit of the Exchange Offer and/or payment for the 2020 Notes" by virtue of their alleged fraudulent conduct.  ¶ 13.  A generalized allegation such as this fails to plead scienter. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

*Second*, Plaintiff does not adequately establish that the Defendants engaged in conscious misbehavior or recklessness.  Where "a plaintiff cannot plead motive and opportunity, allegations of conscious misbehavior or recklessness 'must be correspondingly greater.'"  *Liu v. Intercept Pharms., Inc*., 2020 WL 1489831, at *14 (S.D.N.Y. Mar. 26, 2020) (quoting *Kalnit*, 264 F.3d at 142).  Here, Plaintiff's allegations are conclusory claims that Defendants harbored a secret belief the 2020 Notes were invalid and capitalized on that belief to defraud Plaintiff.  *See, e.g.*, ¶¶ 6, 52, 116, 122.  But none of these conclusory allegations of purported hidden beliefs establishes scienter. *See, e.g.*, *Silsby v. Ichan*, 17 F. Supp. 3d 348, 367 (S.D.N.Y. 2014) (failure to plead scienter where plaintiffs asserted defendant "believed" company was insolvent but "pleaded no facts in support

of this conclusory allegation"); *Mindspirit, LLC v. Evalueserve Ltd.*, 2016 WL 11707410, at *11–12 (S.D.N.Y. Sept. 26, 2016) (allegations that defendant acted "with wrongful intent" regarding Stock Option Agreement did not support a claim for securities fraud under Section 10(b)).

Plaintiff *does not plead a single contemporaneous fact* to support its claims about Defendants' "true" beliefs and intentions at the time of the Exchange Offer.  The only facts that Plaintiff alleges in support of its assertions are statements made *years after* the Exchange Offer, including statements made by persons who were not in any way involved in the Exchange Offer at the time it was made.  *See* ¶¶ 83, 84; *see generally* ¶¶ 84–90, 97–98, 101, 106 (detailing only statements made after April 2019).  These asynchronous statements are wholly insufficient to establish a "strong inference" of scienter *at the time* Defendants' alleged conduct occurred, and *that* time period is what controls the analysis.  *See Diesenhouse*, 2022 WL 3100562 at *7 (dismissing fraud claims where "[p]laintiffs . . . fail[ed] to allege . . . that [defendant's] misrepresentations and omissions were knowingly or recklessly misleading and false *at the time he made them*" other than describing plaintiff's conduct later in time) (emphasis added).

*Third*, there is a far more cogent and compelling inference of scienter to be drawn from the facts at hand.  *ATSI*, 493 F.3d at 99.  Specifically, the Maduro-controlled PDVSA initiated the Exchange Offer, claimed the bonds were legal, and made principal and interest payments under the 2020 Notes for approximately three years after the alleged misstatements and omissions were first made.  At the same time, the National Assembly that had won control in December 2015 was, unequivocally and in public, "[c]ategorically reject[ing]" the defining feature of the Exchange Offer, ¶¶ 36, 43, and made eminently clear—as public reporting indicated—that the Exchange Offer was not constitutionally authorized.  *See supra* at 5-6.  Scienter cannot be imputed to the Maduro-controlled parties at the time of the Exchange Offer based on the *subsequent* recognition

of the Ad-Hoc Board's control of PDVSA in 2019.  *See Jiménez*, 250 A.3d at 839 ("[R]ecognition

of one sovereign authority must exclude others, particularly when those other bodies have taken

positions contrary to the recognized sovereign.").

> D.      Plaintiff Fails to Plead Reasonable Reliance and Cannot Rely on the Fraud-On-The-
>         Market Doctrine

When evaluating allegations of reasonable reliance, courts examine "the sophistication and

expertise of the plaintiff in financial and securities matters," "the existence of longstanding

business or personal relationships," "access to the relevant information," "the opportunity to detect

the fraud," and "the generality or specificity of the misrepresentations."  *Ashland Inc. v. Morgan*

*Stanley & Co*., 652 F.3d 333, 337–38 (2d Cir. 2011).   Where investors are particularly

sophisticated and information informing or rebutting the alleged fraud is in the public domain,

courts will not find reliance reasonable.  *See, e.g.*, *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,

450 Fed. App'x 32, 34–35 (2d Cir. 2011).  Plaintiff cannot adequately plead reasonable reliance.

*First*, Plaintiff makes only conclusory assertions that it "reasonably relied" on Defendants'

misleading statements and omissions.  *See* ¶¶ 55, 126, 135.  These do not satisfy Plaintiff's

pleading burden.  *See Lutin v. N.J. Steel Corp*., 1996 WL 636037, at *7 (S.D.N.Y. Nov. 1, 1996)

("[T]he bare allegation, without supporting facts, that [plaintiffs] relied on defendants' alleged

misrepresentations and omissions does not suffice.").  Where a party alleges reliance on a putative

scheme that has been otherwise disclosed—here, via public reporting and the National Assembly's

resolution, *supra* at 5-6—there cannot be reasonable reliance.  *See In re Livent, Inc. Noteholders*

*Sec. Litig.*, 151 F. Supp. 2d 371, 439 (S.D.N.Y. 2001).

*Second,* Plaintiff is a sophisticated investment fund.  As a sophisticated investment

institution, Plaintiff had a duty to investigate information available to it.  *See id.* at 439.  Here,

there was ample information to put Plaintiff on notice of the misconduct it now alleges.  Plaintiff

acknowledges that, on September 27, 2016, the National Assembly, instead of providing its constitutional authorization, publicly "passed a resolution expressing disapproval" and "categorically rejecting" the Pledge prior to the Exchange Offer's closing.   ¶ 43.  This followed a previous National Assembly resolution in May 2016, declaring that "the Constitution categorically mandates, without exception, the approval of the National Assembly" for any such contract and that the National Assembly's approval is "a condition of the validity of the contract."  Broughel Decl. Ex. 5, May 2016 Resolution at 8.  And as Plaintiff alleges, public reporting contemporaneous to the 2020 Notes issuance indicated recognition of risks related to the validity of the bonds in light of the National Assembly's express rejection thereof.  *See* ¶¶ 70–71.  In addition, Venezuela's Constitution is a public document, and any observer could make its own, independent assessment of the validity of the Exchange Offer and the 2020 Notes.  *See In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) ("[A]n alleged misstatement does not qualify as material if the relevant facts are 'already in the mix of public information' at the time . . . .").

Plaintiff makes specious references to the opinions of *Defendants'* legal counsel on the validity of the Exchange Offer and the 2020 Notes, presumably in an effort to further plead reliance.  ¶¶ 72-74.  But it is ironclad law that "plaintiff[s] cannot properly plead reasonable reliance on the representations of another party's counsel so as to support [their] claim[s] of fraud." *Cascardo v. Stacchini*, 100 A.D.3d 675, 676 (N.Y. App. Div. 2d Dep't 2012); *see also Stone v. Sutton View Cap., LLC*, 2017 WL 6311692, at *3 (S.D.N.Y. Dec. 8, 2017) ("Courts have routinely held that it is unreasonable for a party to rely on the advice of adversary counsel [ ] when both parties are aware that adverse interests are being pursued.").

As a sophisticated party faced with clear, public indications that there were questions about the validity of the Exchange Offer and the 2020 Notes and all of the means to assess the veracity

24

of the 2020 Notes, Plaintiff had a duty to undertake its own investigation but fails to assert anything to suggest that it "ma[de] use of the means of verification that were available to it." *Stone*, 2017 WL 6311692, at *3. Accordingly, Plaintiff does not "properly plead reasonable reliance" and its Section 10(b) claim must be dismissed. *See id.*

To bypass pleading reliance, Plaintiff invokes the presumption of reliance pursuant to the fraud-on-the-market doctrine. ¶¶ 110-111. To plead such reliance, a plaintiff "first must allege that the relevant market was open and developed or, in other words, efficient." *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 303 (S.D.N.Y. 2005). Here, Plaintiff makes conclusory allegations that the 2020 Notes "are traded in efficient markets," "are liquid and traded with moderate volume," and "have been followed by various analysts" (although Plaintiff only identifies a single one). ¶ 110. Accepting, *arguendo*, these allegations adequately plead the market for the 2017 and 2020 Notes was efficient, Plaintiff still would not be entitled to a presumption of reliance because an efficient market by definition incorporates all available public information. *See Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (efficient market is "one in which the prices of the [stock] incorporate most public information rapidly"). This information would include, as described above, news that the National Assembly had publicly passed a resolution categorically rejecting the Exchange Offer as unconstitutional, as well as other public reporting casting doubt on the validity of the 2020 Notes. ¶ 43; *supra* at 5-6. Thus, the presumption is inapplicable as the market was aware of the potential invalidity of the 2020 Notes. *White v. H&R Block, Inc.*, 2004 WL 1698628, at *5-6, *12-13 (S.D.N.Y. July 28, 2004); ¶ 116.

E.     Plaintiff Fails to Plead Causation

The Complaint also fails to adequately plead Defendants' alleged scheme was the proximate cause of Plaintiff's alleged injuries. Proximate causation consists of "both transaction and loss causation." *Lentell v. Merrill Lynch Co.*, 396 F.3d 161, 172 (2d Cir. 2005). "Transaction

causation is akin to reliance." *Id.*  As the Complaint fails to sufficiently allege reliance, it therefore fails to sufficiently allege transaction causation.  *See supra* at III.D.

Loss causation, in turn, represents "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."  *Lentell*, 396 F.3d at 172 (quoting *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)).  "Thus to establish loss causation, 'a plaintiff must allege . . . that the *subject* of the [scheme] was the cause of the actual loss suffered'"—"*i.e.*, that the [scheme] concealed something from the market that, when disclosed, negatively affected the value of the security."  *Id.* at 172–73 (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis in original)).  Plaintiffs can plead loss causation through "facts which, if proven, would show that [their] loss[es] [were] caused by the alleged [scheme] *as opposed to intervening events*."  *Id.* at 174 (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)) (emphasis added).

The Complaint asserts that Plaintiff "suffered damages in the amount of the purchase price for their 2020 Notes," that it "purchased 2020 Notes at inflated prices," and that it "marked down the value of [its] 2020 Notes."  ¶¶ 116-117.  These damages were allegedly the "result of Defendants' false and/or misleading statements and/or omissions of materials [sic] facts," and "[a]s a result of Defendants' fraudulent scheme."  ¶¶ 117, 127.  While Plaintiff generally alleges owning the bonds (¶¶ 15, 110, 126), Plaintiff fails to allege with particularity how it acquired the bonds, the precise date or dates on which it acquired them, for what price, *see, e.g.*, ¶ 55 ("deciding to participate in the 2016 Exchange Offer and/or purchase the 2020 Notes in the primary or secondary market"), or even whether it was exposed to any alleged misstatements.  The Complaint also does not connect Defendants' alleged misstatements and omissions to a decline in value of Plaintiff's interest in the 2020 Notes.  Nor could Plaintiff, because—as pleaded—Defendants' litigation over

the validity of the Exchange Offer and the 2020 Notes is ongoing.  ¶¶ 7–11, 97–103.  Thus, there is no way for the Court to assess whether Plaintiff suffered any losses or whether those purported losses were caused by Defendants' alleged fraud or some other market event that may have caused a decline in the price of the 2020 Notes, as well as what statements Plaintiff might have relied upon, if any.  The claim should be dismissed.  *See Lentell*, 396 F.3d at 175.

F.   Plaintiff's Common Law Fraud Claim (Count 2) Fails for the Same Reason as the Section 10(b) and Rule 10b-5 Claim (Count 1)

The elements of common law fraud under New York law are "substantially identical to those governing § 10(b), [an] identical analysis applies."  *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 446 F. Supp. 2d 163, 195 (S.D.N.Y. July 20, 2006) (citation omitted).  Because Plaintiff's Section 10(b) claim fails as a matter of law, Plaintiff's common law fraud claims based on the same facts fail as well.  *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 414 (S.D.N.Y. 2010); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (citation omitted).

Even if evaluated independently, Plaintiff's Count 2 fraud claim hinges on alleged "false and/or misleading statements and/or omitted material facts . . . with respect to the Exchange Offer," ¶ 32.  Fraud claims based on misstatements or omissions still require a showing of scienter, reliance, and causation, none of which Plaintiff can establish for the reasons described *supra* at III. In particular, Plaintiff fails to adequately plead that the statements in question, ¶¶ 52, 54, 56-58, 62-64, 66-69, 73-74, 82-89, 101, 106, 115, were material misstatements or omissions.  *See Marathon Structured Fin. Fund, LP v. Paramount Pictures Corp.*, 622 F. App'x 85, 86 (2d Cir. 2015) ("Common law fraud . . . requires a material misrepresentation or omission of fact.").  Each alleged statement lends itself to the more plausible conclusion that PDVSA lacked scienter when it executed the Exchange Offer under the Maduro regime, while the National Assembly rejected

the legality of the 2020 Notes.  *See JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 533–34 (S.D.N.Y. 2013).

## IV.   Plaintiff's Fraud Claims That Rely Upon Defendants' Petitions to the U.S. Government Are Barred

As relevant to at least any scheme liability theory under Counts 1, 2, and 3, as well as any other of Plaintiff's claims centered on Defendants' engagement in litigation, lobbying efforts, and other activity directly related to Defendants' efforts to influence U.S. Government policy, Plaintiff's claims are barred.  Under First Amendment principles, activities designed to influence governmental action, including petitions and filings with both the Executive and Judicial Branches, are generally immunized from liability.  *See Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18 (2d Cir. 1980); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669–70 (1965).

Here, *Noerr-Pennington* immunity protects *all* of Defendants' "discussions" with the U.S. Treasury and OFAC.  *See* ¶¶ 12, 78, 91–92, 105, 108.  Indeed, courts routinely apply *Noerr-Pennington* immunity to efforts to influence the Executive Branch.  *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (executive branches of governments); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 893, 896 (10th Cir. 2011) (Superintendent of Insurance); *Assigned Container Ship Claims, Inc. v. Am. President Lines, Ltd.*, 784 F.2d 1420, 1421 (9th Cir. 1986) (Federal Maritime Administration); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 120–23 (3d Cir. 1999) (U.S. International Trade Commission and the Department of Commerce).

The same principle applies to allegations that Defendants' fraud is evidenced in the "filing" and advancement of "frivolous" litigation in relation to creditor proceedings in the Declaratory Judgment Action and in the District of Delaware.  *See* ¶¶ 13, 104–09, 128–37.[19]  The fact that

---

[19] The Complaint does not allege any statements made in *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.* ("*Crystallex*"), No. 17-mc-00151-LPS (D. Del. May 4, 2022) were frivolous, fraudulent, in bad faith, or induced Plaintiff's reliance.  *See* ¶¶ 104–09.  Even if alleged, Defendants' litigation

petitioning may take place via the Judiciary does not remove it from *Noerr-Pennington* immunity. *See United Mine Workers of Am.*, 381 U.S. at 669–70; *Cal. Motor Transp.*, 404 U.S. at 510.

Lastly, Defendants' participation in the Declaratory Judgment Action and in *Crystallex* is separately protected from liability pursuant to the official proceedings immunity. "[S]tatements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, . . . so long as they are material and pertinent to the issue to be resolved in the proceeding." *Lipin v. Hunt*, 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015).

## V.   Plaintiff Fails to Plead Aiding and Abetting Fraud

To state a claim for aiding and abetting a fraud, a plaintiff must allege (1) existence of an underlying fraud; (2) actual knowledge of the fraud; and (3) substantial assistance in the fraud. *Gross v. Chambre*, 2017 WL 8729048, at *3 (N.Y. Sup. Ct. Apr. 6, 2017). "It is insufficient to merely raise allegations sufficient to state a claim against the principal participants for fraud and combine conclusory allegations that the aider and abettor had actual knowledge of the fraud." *Id.*

For the reasons set forth in Part III and Part IV, Plaintiff has not alleged predicate fraud. Plaintiff's aiding and abetting claims thus must be dismissed. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 186–87 (S.D.N.Y. 2009). In addition, as relevant to the Section 10(b) and Rule 10b-5 claims, private civil liability does not extend to those who merely aid and abet a violation. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 177 (1994); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 151 n.22 (2d Cir. 2015). Finally, the Complaint impermissibly group pleads the claim against all the Defendants collectively, without differentiating how each allegedly aided and abetted the others. ¶¶ 138–41.

---

positions have no bearing on the 2020 Notes validity and no bondholders are a party in that action. As a result, no bondholder could rely on statements in *Crystallex* to make decisions about the 2020 Notes.

## VI.     Plaintiff's Alternative Common Law Fraud Claim Is Baseless and Must Be Dismissed

Plaintiff alleges in Count 3 that Defendants' statements made "in sworn court filings" were themselves fraudulent.  ¶¶ 126–35.  Plaintiff's theory has no basis in law.

*First*, Plaintiff fails to plead any facts that could support reliance on these statements.  It is axiomatic that "an adversarial relationship negates as a matter of law any inference that sophisticated business people are relying on their adversary's representation."  *Bd. of Managers of 325 Fifth Ave. Condo. v. Cont'l Residential Holdings LLC*, 149 A.D.3d 472, 474 (N.Y. App. Div. 1st Dep't 2017) (cleaned up).  Here, Plaintiff freely admits these statements were made "in sworn court filings and other public documents" as Defendants pursued the Declaratory Judgment Action against the Trustee and the Collateral Agent of the 2020 Notes, who are representatives of the 2020 Noteholders. ¶ 131; *see also* ¶¶ 7–11, 97–103; Broughel Decl. Ex. 2, Indenture § 5.01(h); Broughel Decl. Ex. 3, Pledge Agreement at 1.  Plaintiff was therefore in an adversarial relationship with Defendants when these statements were made and cannot rely on them as a matter of law.

*Second*, Plaintiff does not explain how Defendants' alleged conduct, in announcing they now believe the Exchange Offer and 2020 Notes to be invalid, is somehow indicative of an intent to deceive.  Plaintiff does not assert, for instance, any facts suggesting Defendants will "benefit[] in a concrete and personal way from [this] purported fraud."  *Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 261 (S.D.N.Y. 2000).  Plaintiff does not assert any facts that show Defendants, in making these statements, "engaged in deliberately illegal behavior."  *Id.*  Plaintiff does not assert any facts to suggest Defendants "knew facts or had access to information suggesting that [these] public statements were not accurate."  *Id.*  And Plaintiff does not allege Defendants, in making these statements "failed to check information they had a duty to monitor."  *Id.*

## CONCLUSION

Defendants respectfully submit that the Complaint should be dismissed with prejudice.

Dated: New York, New York
November 29, 2023

PAUL HASTINGS LLP

_s/ Kurt W. Hansson_____
Kurt W. Hansson
Kevin P. Broughel
James L. Ferguson
Zoe Lo
Zachary D. Melvin
200 Park Avenue
New York, New York 10166
Telephone: 212-318-6000
Facsimile: 212-319-4090
kurthansson@paulhastings.com
kevinbroughel@paulhastings.com
jamesferguson@paulhastings.com
zoelo@paulhastings.com
zacharymelvin@paulhastings.com

*Counsel for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo, S.A.*

WILLKIE FARR & GALLAGHER LLP

_s/ Jeffrey B. Korn_____
Jeffrey B. Korn
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
jkorn@willkie.com

Michael J. Gottlieb*
Kristin E. Bender
1875 K Street, NW
Washington, DC 20006
Telephone: 202-303-1000
Facsimile: 202-303-2000
mgottlieb@willkie.com
kbender@willkie.com

*[signature continues on next page]*

Nicholas Reddick*
One Front Street, 34th Floor
San Francisco, California 94111
Telephone: 415-858-7400
Facsimile: 415-858-7599
nreddick@willkie.com

* *Admitted Pro Hac Vice*

*Counsel for Defendant PDV Holding, Inc.*