CLARK SMITH VILLAZOR

Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, NY 10019
www.csvllp.com

**CHRISTOPHER J. CLARK**

T 212 377 0850
clark@csvllp.com

April 2, 2024

**VIA ECF**

The Honorable Denise L. Cote
United States District Court Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

> **Re: The Impact of the New York Court of Appeals' Decision in *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023-KPF (S.D.N.Y.)**

Dear Judge Cote:

We represent plaintiff VR Global Partners L.P. ("Plaintiff") in *VR Global Partners L.P. v. Petróleos de Venezuela S.A.,* No. 23-cv-05604, and write in response to the Court's March 26, 2024 Order (ECF No. 44) requesting that the parties address the impact of the New York Court of Appeals' February 20, 2024 opinion responding to a certified question from the Second Circuit Court of Appeals arising from a decision in the substantively connected case *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.,* No. 19-cv-10023 (KPF) (S.D.N.Y.) on the litigation before this Court and on the pending motion to dismiss. Plaintiff in this case is aligned with the interests of defendants MUFG Union Bank, N.A. in the case before Judge Failla.

In essence, the securities fraud, common law fraud and aiding and abetting fraud claims in Plaintiff's Amended Complaint (the "Complaint") (ECF No. 35) are that the control persons at defendants Petróleos de Venezuela, S.A., PDVSA Petróleo, S.A., and PDV Holding (collectively "PDVSA Parties") publicly assured investors, including Plaintiff, that they intended to honor their obligations under the 2020 Notes, and that the Notes were governed by New York law, never once disclosing that the Notes might be illegal or were subject to approval by the National Assembly and potentially governed by Venezuelan law on issues of their validity. The New York Court of Appeals, in a decision of first impression interpreting New York section UCC 8-110(a)(1) that was referred by the Second Circuit, have held that the validity of the 2020 Notes only is now governed by Venezuelan law,[1] not New York Law as the PDVSA Parties consistently and fraudulently told

---

[1] On remand, Judge Failla, among other things, will now still likely have to address disputed issues under Venezuelan law of whether the 2020 Notes are valid that were previously addressed before her at length by the parties. Judge Failla did already hold, however, that the pre-offering 2016 Resolution of the Venezuelan National Assembly relied on by the PDVSA Parties never said that the offering was illegal, never said the offering fell under Article 150 of the Constitution, and never

Plaintiff and other 2020 Note holders for over three years. The impact of this Court of Appeals decision on this litigation, and on the pending motion to dismiss before this Court, is therefore to strengthen Plaintiff's claims for securities fraud, common law fraud and aiding and abetting against the PDVSA Parties, further supporting denial of the pending motion to dismiss. By now holding that Venezuelan law governs matters going to the validity of the 2020 Notes, the Court of Appeals decision makes it even more clear that the PDVSA Parties acted with the requisite scienter, an intent to deceive or recklessness, in consistently reassuring Plaintiff, and other investors, that New York law governed the 2020 Notes, not Venezuelan law, and that the 2020 Notes were not illegal, or subject to approval by the National Assembly. The PDVSA Parties intended to deceive investors or acted recklessly by misrepresenting to them that New York law applied to the validity of the 2020 Notes, while knowing that the PDVSA Parties, as part of a scheme to defraud, planned to assert that Venezuelan law applied to the Notes' validity – the result that the Court of Appeals has now found in response to the PDVSA Parties' fraudulent scheme to invalidate the Notes.

As detailed in the Complaint, the PDVSA Parties, spearheaded by José Ignacio Hernández, Venezuela's former Special Attorney General, developed and maintained an ongoing scheme to defraud its bondholders via false and misleading statements and underhanded petitions to public officials. This scheme to defraud began in 2016 when the PDVSA Parties offered a swap of notes set to mature in 2017 for senior secured notes due in 2020. (*See* Compl. ¶ 2.) From 2016, the PDVSA Parties publicly assured investors, including Plaintiff, that they intended to honor their obligations under the 2020 Notes and that the Notes were governed by New York law, and never once disclosed that the Notes might be illegal or were subject to approval by the National Assembly and potentially governed by Venezuelan law (as the Court of Appeals has now held as to the 2020 Notes' validity only). (*See id*. ¶¶ 51-74.) Relying on these statements, Plaintiff purchased 2020 Notes then worth $30 million.

For example, as detailed in the Complaint, the 2016 Offering Circular for the 2020 Notes contained a 15-page discussion of "Risk Factors," never identifying as a risk factor that the 2020 Notes, the Indenture, or the Pledge Agreement were subject to challenge as invalid or illegal under Venezuelan law, or subject to approval of, but not approved by, the National Assembly or were in violation of the Venezuelan Constitution. (*See id.* ¶ 53.) Moreover, the Offering Circular stated unequivocally that the 2020 Notes would be governed by New York law, never disclosing that the PDVSA Parties believed the validity of the 2020 Notes were governed by Venezuelan law (*see id.* ¶ 54), as the Court of Appeals has now found at the PDVSA Parties' urging.

As the scheme to defraud unfolded, the PDVSA Parties publicly paid interest on the 2020 Notes and declared that they intended to abide by the Notes' terms, while at the same time, in a memorandum from April 2019, Hernández detailed PDVSA's fraudulent strategy to argue that the 2016 Exchange Offer was illegal as a contract of national public interest not approved by the National Assembly and purportedly in violation of the Venezuelan Constitution. (*See id.* ¶¶ 79-89.) Six months later, the PDVSA Parties unleashed their public attempt to prevent payments to Noteholders under the same scheme to defraud outlined by Hernández in his memorandum, when

---

said that the transaction was illegal. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257, 277-81 (S.D.N.Y. 2020).

the National Assembly on October 15, 2019, passed a non-binding resolution declaring for the very first time that the 2020 Notes were invalid under the Venezuelan Constitution. (*See id.* ¶ 90.) The PDVSA Parties then defaulted on the 2020 Notes two weeks later, failing to make required payments of principal and interest. (*See id.* ¶¶ 93-96.) The very next day, the PDVSA Parties adopted the exact legal strategy Hernández had advocated six months earlier and commenced the case before Judge Failla, seeking a declaration that the 2020 Notes are invalid. (*See id.* ¶¶ 97-98.[2])

This failure by the PDVSA Parties to disclose from the beginning in 2016 to investors, including Plaintiff, the material information that the 2020 Notes might be illegal, were potentially governed by Venezuelan law, and were subject to approval by the National Assembly, is at the center of Plaintiff's claims for securities fraud, common law fraud and aiding and abetting. The Court of Appeals' holding that Venezuelan law now applies to the validity of the 2020 Notes underscores that the PDVSA Parties acted with the requisite scienter to deceive investors, including Plaintiff, by making false and misleading statements that New York law would apply to the Notes as part of their fraudulent scheme. In doing so, the Court of Appeals decision further strengthens Plaintiff's opposition to the PDVSA Parties' motion to dismiss, which should be denied.

The question decided by the Court of Appeals concerning the application of New York UCC section 8-110(a)(1) was a question of first impression certified by the Second Circuit, which has now been decided by New York's highest court. Judge Failla had previously held unequivocally that New York law governed all issues related to the 2022 Notes, including their validity. *See Petróleos de Venezuela S.A.,* 495 F. Supp. 3d at 283-91. As our discussion above underscores, however, the Court of Appeals decision has created new law and facts with implications that go to the center of Plaintiff's claims. Under the circumstances, as an alternative to denying the PDVSA Parties' motion to dismiss, Plaintiff respectfully renews the request for leave to amend the Complaint raised in its opposition to the motion to dismiss, to permit Plaintiff the opportunity to address the implications of the Court of Appeals' decision in the Complaint and make such other amendments as appropriate. The Federal Rules prescribe that leave to amend "shall be freely given when justice so requires." *Forman v. Davis*, 371 U.S. 178, 182 (1962), *see also* Fed R. Civ. P. 15(a).

Respectfully Submitted,

*/s/ Christopher J. Clark*
Christopher J. Clark

*Counsel for Plaintiff VR Global Partners, L.P.*

cc: Counsel of Record (via ECF)

---

[2] The PDVSA Parties' and Hernández's fraudulent scheme to avoid its obligations under the 2020 Notes has already worked spectacularly – it has now been more than four years since the PDVSA Parties made any required payments of principal or interest under the 2020 Notes to Plaintiff or the other Note holders.