UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------- X
                                 :
VR GLOBAL PARTNERS, L.P.,        :
                                 :            23cv5604 (DLC)
                       Plaintiff, :
                                 :            OPINION
         -v-                     :            AND ORDER
                                 :
PETRÓLEOS DE VENEZUELA, et al.,  :
                                 :
                     Defendants. :
-------------------------------- X

APPEARANCES:

For plaintiff VR Global Partners, L.P.:
Christopher J. Clark
Benjamin A. Butzin-Dozier
Clark Smith Villazor LLP
250 W. 55th Street, 30th Floor
New York, NY 10019

For defendants Petróleos de Venezuela S.A., PDVSA Petróleos
S.A., and PDV Holding, Inc.:
Kurt W. Hansson
Kevin P. Broughel
James L. Ferguson
Zoe Lo
Zachary D. Melvin
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Jeffrey B. Korn
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Michael J. Gottlieb
Kristen E. Bender
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006

Nicholas Reddick
Willkie Farr & Gallagher LLP
One Front Street, 34th Floor
San Francisco, CA 94111

DENISE COTE, District Judge:

VR Global Partners, L.P. ("VR Capital") is an investment
fund.  It has sued Petróleos de Venezuela S.A. ("PDVSA"), an oil
and natural gas company wholly owned by the government of
Venezuela, and two of PDVSA's affiliates for fraud in connection
with PDVSA notes due to mature in October of 2020 (the "2020
Notes").  The plaintiff principally contends that the defendants
have engaged in a scheme to defraud investors in the 2020 Notes
since 2016.  The plaintiff relies on statements by the
defendants and others, made in 2019 and thereafter, that the
Notes are invalid since they were issued without the approval of
Venezuela's National Assembly.  The defendants have moved to
dismiss the amended complaint ("FAC").  For the following
reasons, the motion is granted.

### Background

The following facts are taken from the FAC and documents
upon which it relies.  For the purposes of deciding this motion,
the FAC's factual allegations are accepted as true, and all
reasonable inferences are drawn in the plaintiff's favor.

Plaintiff VR Capital is an investment fund with its
principal place of business in New York.  It purchased $30

million in principal of the 2020 Notes between August 2017 and January 2018.

PDVSA, an oil and natural gas company established and wholly owned by the government of Venezuela, issued the 2020 Notes.  PDVSA owns 100% of the shares of defendants PDVSA Petróleo S.A. ("PDVSA Petróleo") and PDV Holding, Inc. ("PDVH") (together, "PDVSA Parties").  PDVSA Petróleo is a Venezuelan corporation, and PDVH is incorporated in Delaware.  PDVH, in turn, owns 100% of the shares of Citgo Holding ("Citgo").  The 2020 Notes were secured by a pledge of PDVH of just over 50% of the capital stock of Citgo.

The 2020 Notes were created in an exchange in 2016 of notes due in 2017 (the "2017 Notes").  As of September 16, 2016, the 2017 Notes had an aggregate outstanding principal balance of $7.1 billion.  To refinance the 2017 Notes, PDVSA offered to exchange all remaining 2017 Notes for Notes that would come due in 2020, i.e., the 2020 Notes.

At the time of the Exchange Offer, Nicolás Maduro was recognized as the President of Venezuela.  Opposition parties controlled the National Assembly, however, and on September 27, the National Assembly passed a resolution expressing disapproval of PDVH's pledge of Citgo stock to secure the 2020 Notes.

On October 27 and 28, an Indenture and a Pledge Agreement for the 2020 Notes were executed in New York.  Parties to the

Indenture and the Pledge Agreement included PDVSA, PDVSA
Petróleo and New York-based investment firms.

I.    2016 Omissions

The FAC alleges that the defendants repeatedly omitted
material information concerning the validity of the 2020 Notes
in the documents that accompanied the creation of the 2020
Notes.  The Offering Circular, issued on September 16, 2016,
contained a 15-page discussion of risks relating to the 2020
Notes.  These risks included social and political tension in
Venezuela, investment in emerging markets, and the potential
decrease in oil and gas prices.  But the Offering Circular did
not identify as a risk factor that the 2020 Notes were subject
to challenge as invalid because they had not been approved by
the National Assembly.  Moreover, the Offering Circular
represented that the transaction documents would be governed by
New York Law.  It did not disclose that PDVSA believed that the
transaction documents were instead governed by Venezuelan law.

In the Indenture, executed on October 27, 2016, PDVSA
represented that it had "duly authorized the exchange of [2017]
Notes for [2020] Notes," and "duly authorized the execution and
delivery of this Indenture."  The Indenture did not reflect that
PDVSA believed approval by the National Assembly was required
for the 2020 Notes to be valid.  In addition, the Indenture
represented that all matters relating to the Indenture were to

be governed by New York law.  It did not disclose that the
defendants believed the Indenture was in fact governed by
Venezuelan law.

Similarly, in the Pledge Agreement, executed on October 28,
2016, PDVH failed to represent that it believed that the
execution and delivery of the agreement would be invalid without
approval by the National Assembly.  It also failed to disclose
that it believed the law of Venezuela governed the Agreement.

II.  The October 28, 2019 Default

Between October 2016 and April 2019, the defendants made
payments of over $2 billion in principal and interest on the
2020 Notes.  Meanwhile, on January 23, 2019, U.S. President
Donald Trump recognized Juan Guaidó as the Interim President of
Venezuela.  On October 15, 2019, Guaidó's administration
declared the 2020 Notes invalid.

The October 2019 declaration followed advice given to
Guaidó earlier in 2019.  Prior to an interest payment made on
April 27, 2019, the Special Attorney General of Venezuela, José
Ignacio Hernández, sent a memorandum, dated April 15, to Guaidó,
describing his proposed strategies to avoid making the payment.
One of these strategies included arguing that the Exchange Offer
was illegal and in violation of Article 150 of the Venezuelan
Constitution because it had not been approved by the National
Assembly.  Following PDVSA's April 27 interest payment on the

2020 Notes, a PDVSA Director wrote to all members of the PDVSA Ad Hoc Board of Directors: "After reading all the documents, I think that there is nothing else we can do but prepare to pay the interest, in the case that illegality can be demonstrated I do not think we would have the time and we would risk the shares of Citgo that have been compromised in this procedure."

On October 15, 2019, the National Assembly passed a non-binding resolution declaring that the 2020 Notes were invalid under the Venezuelan Constitution.  On October 24, the PDVSA Parties secured an order from the Office of Foreign Assets Control ("OFAC"), which temporarily delayed foreclosure authorization on the 2020 Notes.  On October 28, PDVSA failed to make the payments of principal and interest due on the 2020 Notes.  These failures to pay were Events of Default under the Indenture.

On October 29, 2019, the PDVSA Parties sought a declaratory judgment in an action filed before the Honorable Katherine Polk Failla that the 2020 Notes and their governing documents are invalid, on the ground that the Venezuela National Assembly did not approve them.  Judge Failla held that the 2020 Notes are valid and enforceable.  Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A., 495 F. Supp. 3d 257, 292-93 (S.D.N.Y. 2020).  On October 13, 2022, the Court of Appeals for the Second Circuit reserved decision on appeal and certified questions to the New

6

York Court of Appeals.  The New York Court of Appeals issued its response on February 20, 2024.  It held that Venezuelan law governs the validity of the 2020 Notes, but New York law governs the consequences of any defect in validity.  Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A., --- N.Y. ---, 2024 WL 674251, *14 (Feb. 20, 2024).  The New York Court of Appeals cautioned that, even if a court determines "that a security is invalid under the local law of the issuer's jurisdiction, the effects of that determination will depend on New York law."  Id. at *18.

This action was filed on June 29, 2023.  On October 4, the defendants filed a motion to dismiss, and an Order of October 5 set a deadline for the plaintiffs to amend their complaint or oppose the defendants' motion to dismiss.  The Order stated that it would be unlikely that the plaintiff would have a further opportunity to amend.

The FAC was filed on October 25.  The defendants renewed their motion to dismiss on November 29.  The motion became fully submitted on January 30, 2024.  On March 26, the Court invited the parties to provide their views of the impact of the February 20 New York Court of Appeals decision on this litigation.  The parties responded in letters of April 2.  Where pertinent, those responses are discussed below.

## Discussion

The plaintiff asserts four claims.  It asserts a claim of securities fraud under § 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 thereunder; two claims of common law fraud; and one claim of aiding and abetting fraud.  Federal courts sitting in diversity apply the choice-of-law rules of the forum state.  Kinsey v. N.Y. Times Co., 991 F.3d 171, 176 (2d Cir. 2021).  Where the parties' briefs assume that the law of the forum state governs the case, "such implied consent is . . . sufficient to establish the applicable choice of law."  Trikona Advisers Ltd. v. Chugh, 846 F.3d 22, 31 (2d Cir. 2017) (citation omitted).  The parties have relied upon and thereby consented to the application of New York law in this case.  Therefore, the common law fraud and aiding and abetting claims are considered under New York law.

The defendants have moved to dismiss the FAC on principally three grounds.  They are that the Exchange Act claim is barred by the doctrine of extraterritoriality, that each claim is time-barred, and that there is a failure to state a claim for relief as to any claim.  Only the last of these three arguments succeeds.

## I.   Extraterritoriality

The defendants argue that the plaintiff's claim under § 10(b) and Rule 10b-5 of the Exchange Act should be dismissed

because it arises out of an extraterritorial transaction. Section 10(b) of the Exchange Act applies to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 267 (2010). "[T]o sufficiently allege the existence of a domestic transaction in other securities, plaintiff[] must allege facts indicating that irrevocable liability was incurred or that title was transferred within the United States." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 62 (2d. Cir. 2012). To establish irrevocable liability, "it is sufficient for a plaintiff to allege facts leading to the plausible inference that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security." Giunta v. Dingman, 893 F.3d 73, 79 (2d Cir. 2018) (citation omitted). Relevant facts include the terms and place of the parties' contracting, the placement of purchase orders, and the exchange of money. Id.

The FAC plausibly pleads that the purchase of 2020 Notes is a domestic transaction subject § 10(b) and Rule 10b-5. The plaintiff, a New York-based company, purchased the 2020 Notes in over-the-counter transactions. The Notes are governed by the Indenture and Pledge Agreement, which were negotiated and

executed in New York and state that they are governed by New York law.  The transfer agent for the Notes is located in New York.  The 2020 Notes are payable in U.S. dollars, and principal and interest on the 2020 Notes are to be paid in the United States.  The collateral for the Notes is also located in the United States.  The FAC has plausibly pleaded that the parties incurred irrevocable liability in the United States to sell and purchase the 2020 Notes.

In their letter of April 2, the defendants argue that the decision by the New York Court of Appeals, selecting Venezuelan law to govern the validity of the 2020 Notes, adds to their argument that the FAC concerns a predominantly foreign transaction.  This additional fact fails to overcome the many significant connections of the 2020 Notes to the United States.  Indeed, the Court of Appeals recognized that the enforcement of rights under the Notes would be governed by New York law.

II.  Statutes of Limitations and of Repose

The defendants assert that the plaintiff's claims are time-barred.  A district court may consider the affirmative defense of timeliness on a motion to dismiss "[w]here the dates in a complaint show that" an action is time-barred.  Cangemi v. United States, 13 F.4th 115, 134 (2d Cir. 2021) (citation omitted).

Ordinarily, a statute of limitations creates a time limit for filing a lawsuit "based on the date when the claim accrued." CTS Corp. v. Waldburger, 573 U.S. 1, 7 (2014) (citation omitted).  Typically, a claim accrues when the plaintiff can file suit and obtain relief.  Id.

In contrast, a statute of repose "puts an outer limit on the right to bring a civil action."  Id. at 8.  That time limit is measured "from the date of the last culpable act or omission of the defendant."  Id. (citation omitted).  It is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered."  Id. (citation omitted).  A statute of repose "begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered" the cause of action.  Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 107 (2d Cir. 2013)(citation omitted)(addressing § 13 of the Securities Act).

Accordingly, statutes of limitations "require plaintiffs to pursue diligent prosecution of known claims" and are subject to equitable tolling.  CTS Corp., 573 U.S. at 8 (citation omitted). "Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  Id. at 9 (citation omitted).

11

A.  Exchange Act

Claims brought under § 10(b) of the Exchange Act are subject to a two-year statute of limitations and a five-year statute of repose, whichever is shorter.  The Exchange Act limitations periods are provided by § 1658 of Title 28 of the United States Code.  See Merck & Co. v. Reynolds, 559 U.S. 633, 638 (2010).  Section 1658 provides that

> [A] private right of action that involves a claim of fraud . . . in contravention of . . . the securities laws may be brought not later than the earlier of (1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation.

28 U.S.C. § 1658(b)(emphasis added).  Thus, Exchange Act claims "sounding in fraud must be filed within the earlier of five years from the alleged violation or two years after discovery of the facts constituting the violation." Charles Schwab Corp. v. Bank of America Corp., 883 F.3d 68, 94 (2d Cir. 2018) (citing 28 U.S.C. § 1658(b)).

The two-year statute of limitations in a § 10(b)(5) private cause of action "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, the facts constituting the violation -- whichever comes first."  Merck, 559 U.S. at 637.  Those facts "include the fact of scienter."  Id.

The defendants move to dismiss plaintiff's Exchange Act claim on the ground that it is barred by the five-year statute of repose.[1]  That motion is denied.

The FAC alleges that the defendants engaged in a scheme to defraud investors with the issuance of the Exchange Offer on September 16, 2016.  The plaintiff asserts that it acquired the 2020 Notes between August 2017 and January 2018.  The last culpable act of the defendants in connection with the alleged scheme would not have been earlier than the default on the 2020 Notes on October 28, 2019.  This action was filed on June 29, 2023, less than five years after the default.

The defendants argue that the five-year statute of repose should be measured from the last date of the plaintiff's purchase of the 2020 Notes in January 2018 instead of the date of default in 2019.  Not so.  A statute of repose "begins to run from the defendant's violation."  City of Pontiac Gen. Emp. Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 176 (2d Cir. 2011).  The defendants are alleged to have engaged in a scheme to declare the 2020 Notes invalid.  The formal declaration occurred in October 2019 and it culminated in the default on the 2020 Notes that same month.  The default was a violation of the Indenture and Pledge Agreement, which, in turn, injured Noteholders,

---

[1] The defendants have not moved to dismiss the Exchange Act claim pursuant to its two-year statute of limitations.

including the plaintiff.  The operative event for the statute of repose, therefore, is the defendants' default on the 2020 Notes in October of 2019.

B. New York Fraud Claims

Under New York law, an "action based on fraud" must be brought within the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. 213(8) (emphasis added); see Meyer v. Seidel, 89 F.4th 117, 130-31 (2d Cir. 2023).  A claim of aiding and abetting fraud is also "subject to the greater of a six-year statute of limitations period or two years from when the alleged fraudulent activity was discovered or could have been discovered with reasonable diligence."  Belair Care Ctr., Inc. v. Cool Ins. Agency, Inc., 91 N.Y.S.3d 793, 799 (3d Dep't. 2019) (citing N.Y. C.P.L.R. 213(8)).

The plaintiff's common law fraud and aiding and abetting fraud claims are timely.  As the parties acknowledge, these claims are subject to a six-year statute of repose.  The defendants' default occurred on October 28, 2019.  This action was filed fewer than four years later.

The defendants argue that the plaintiff's claims are time barred because they arise out of the omissions in the 2016 offering documents.  A fraud claim accrues, however, only when

14

all the elements of a tort claim can be alleged. Pape Ventures, Inc. v. American Sports Media, LLC, 171 N.Y.S.3d 675, 677 (4th Dept. 2022). The pleading of damages is a necessary element of a fraud claim, and that only occurred with the default upon the 2020 Notes in October 2019. Therefore, the common law claims are timely.

### III. Failure to State a Claim

The defendants argue that the FAC should be dismissed because the plaintiff has failed to adequately plead any of its claims. Under Rule 12(b)(6), a party "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076–77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). In securities fraud actions,

> [t]he Court may also consider any written instrument
> attached to the complaint, statements or documents
> incorporated into the complaint by reference, legally
> required public disclosure documents filed with the SEC,
> and documents possessed by or known to the plaintiff upon
> which it relied in bringing the suit.

Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation

omitted).

A. Securities Fraud

The plaintiff claims that the defendants violated § 10(b)

of the Exchange Act and Rule 10b-5(a) and (c) thereunder.

Section 10(b) makes it unlawful to "use or employ, in connection

with the purchase or sale of any security . . . any manipulative

or deceptive device or contrivance in contravention of" SEC

rules.  15 U.S.C. § 78j(b).

> Rule 10b-5, in turn, provides:

> It shall be unlawful for any person, directly or
> indirectly, by the use of any means or instrumentality of
> interstate commerce, or of the mails or of any facility of
> any national securities exchange,

> (a) To employ any device, scheme, or artifice to defraud, .
> . . or

> (c) To engage in any act, practice, or course of business
> which operates or would operate as a fraud or deceit upon
> any person,

> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

"To state a scheme liability claim, a plaintiff must show:

(1) that the defendant committed a deceptive or manipulative

act, (2) in furtherance of the alleged scheme to defraud, (3)
with scienter, and (4) reliance." Plumber & Steamfitters Loc.
773 Pension Fund v. Danske Bank A/S, 11 F.4th 90, 105 (2d Cir.
2021) (citation omitted).  A plaintiff must specify "what
deceptive or manipulative acts were performed, which defendants
performed them, when the acts were performed, and the effect the
scheme had on investors in the securities at issue." Id.
(citation omitted).  The Supreme Court has explained that Rule
10b-5(a) and (c) "capture a wide range of conduct," and that
"dissemination of false or misleading statements with intent to
defraud" can fall within the scope of subsections (a) and (c) of
Rule 10b-5." Lorenzo v. S.E.C., 139 S.Ct. 1094, 1101 (2019).

"A claim fails where the plaintiff does not allege that [a
defendant] misled him concerning the value of the securities he
sold or the consideration he received in return." Charles
Schwab Corp., 883 F.3d at 96 (citation omitted).  In addition, a
"fraudulent misrepresentation or omission is not made in
connection with such a purchase or sale of a covered security
unless it is material to a decision by one or more individuals
(other than the fraudster) to buy or to sell a covered
security." Chadbourne & Parke LLP v. Troice, 571 U.S. 377, 387
(2014).

Omissions are material "when there is a substantial
likelihood that the disclosure of the omitted fact would have

been viewed by the reasonable investor as having significantly altered the total mix of information made available." Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd., 19 F.4th 145, 151 (2d Cir. 2021) (citation omitted). "Absent an actual statement, a complete failure to make a statement -- in other words, a pure omission -- is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 239 (2d Cir. 2016) (citation omitted).

Scienter may be established "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." New England Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo, 80 F.4th 158, 177 (2d Cir. 2023) (citation omitted). Where scienter is based on conscious misbehavior, the plaintiff must show "deliberate illegal behavior, a standard met when it is clear that a scheme, viewed broadly, is necessarily going to injure." Id. at 178 (citation omitted).

Complaints alleging securities fraud violations are subject to a heightened pleading standard pursuant to the PSLRA and Rule 9(b), Fed. R. Civ. P. "[B]ecause such a claim sounds in fraud, the plaintiff must state with particularity the circumstances constituting fraud." Altimeo Asset Mgmt., 19 F.4th at

18

150 (citation omitted).  The PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  In re Synchrony Fin. Sec. Litig., 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted).

The FAC fails to plead a scheme to defraud that existed as of the time the plaintiff purchased the 2020 Notes, which was on or before January 2018.  The FAC asserts that the Exchange Offer in 2016 was conducted by the defendants through a series of false statements and omissions in the Offering Documents.  In brief, those false statements and omissions were that the Notes were valid and governed by New York law when the defendants believed them to be invalid and governed by Venezuelan law.  Those false statements and omissions were designed to induce bondholders to tender the 2017 Notes in exchange for the 2020 Notes and to induce trading of the 2020 Notes in the secondary market.  The FAC alleges that the defendants acted in 2016 with the intention of refusing to fulfill their repayment obligations under the 2020 Notes.  The FAC pleads no facts to support this theory.

Instead, as described in the FAC, the defendants paid the principal and interest on the Notes until late 2019.  The only "scheme" plausibly alleged in the FAC began in early 2019, as Juan Guaidó and Jose Ignacio Hernández designed a strategy to

protect the Citgo stock from seizure while stopping payment on
the 2020 Notes.  That strategy, which became public in October
2019, was to declare the 2020 Notes invalid under the Venezuelan
Constitution.

As a result, the FAC fails to plead with sufficient
particularity the existence of the scheme which it alleges was
hatched in 2016 and fails to plead scienter with respect to that
scheme, among other things.  Its allegations regarding the
defendants' purported beliefs and intentions in 2016 are
entirely conclusory.  It is therefore unnecessary to address the
other arguments raised by the defendants to support their motion
to dismiss this claim.

B. Common Law Fraud

The plaintiff pleads two claims of common law fraud.  Its
first such claim relies on the same scheme, statements and
omissions upon which the § 10(b) claim relies.  The second
common law fraud claim is pleaded in the alternative.  It
asserts that the defendants' statements in 2019 and 2020 that
the 2020 Notes are invalid were false because the 2020 Notes
are, in fact, legal and enforceable.

The elements of a cause of action sounding in fraud in New
York are "(1) a material misrepresentation or omission of fact
(2) made by a defendant with knowledge of its falsity (3) and
intent to defraud; (4) reasonable reliance on the part of the

20

plaintiff; and (5) resulting damage to the plaintiff." Loreley

Fin. (Jersey) No. 3 Ltd. v. Wells Fargo. Sec., LLC, 13 F.4th

247, 259 (2d Cir. 2021) (citation omitted).  To plead common law

fraud under New York law, "a plaintiff must allege facts to

support the claim that it justifiably relied on the alleged

misrepresentations."  SRM Glob. Master Fund Ltd. P'ship. v. Bear

Stearns Co. L.L.C., 829 F.3d 173, 177 (2d Cir. 2016) (citation

omitted).  The pleading standard under Fed. R. Civ. P. 9(b)

applies to common law fraud claims under New York law.  Loreley

Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160,

170-71 (2d Cir. 2015).

For the same reasons already given in connection with the §

10(b) claim, the FAC's first claim of common law fraud is

dismissed.  It fails to plead with sufficient particularity the

existence of a scheme that began with the issuance of the 2020

Notes in 2016, or the defendants' scienter with respect to that

scheme.

The second common law fraud scheme alleged in the FAC is

that the defendants engaged in fraud beginning in 2019 by

representing in court filings that the 2020 Notes are invalid.

The FAC alleges that such statements are false because the 2020

Notes are in fact valid and enforceable.  The defendants assert

that they relied on these false statements and were injured

thereby when they marked down their 2020 Notes.  The FAC does
not plead a date for that markdown.

The parties spend little time discussing this alternative
theory of fraud, but it must be dismissed as well.  The FAC
fails to allege that the statements made by the defendants,
which the FAC describes as being made in their complaint filed
in 2019 in the Southern District of New York, were made with the
requisite scienter.  The FAC does little more than describe the
defendants' statements of opinion that the 2020 Notes are void
because they were issued without authorization of the Venezuelan
National Assembly as required by the Venezuelan Constitution.

"Statements of opinion are generally not actionable in a
fraud cause of action" and are only "actionable as fraud if the
plaintiff can plead and prove that the holder of the opinion did
not subjectively believe the opinion at the time it was made and
made the statement with the intent to deceive."  M&T Bank Corp.
v. McGraw Hill Co. Inc., 5 N.Y.S.3d 783, 785 (4th Dep't. 2015)
(citation omitted).  The FAC has failed to plausibly plead with
the particularity required by Rule 9(b) that, at the time they
filed the 2019 lawsuit, the defendants did not believe the 2020
Notes were invalid.  To the contrary, the FAC alleges that in
2019 the defendants believed and ultimately made public
representations that the 2020 Notes were invalid.  For instance,
it asserts that in April 2019 the PDVSA Ad Hoc Board "believed

that the 2020 Notes were not valid or enforceable", but the PDVSA Parties were not yet ready to test this theory and therefore made the April 2019 interest payment.  Immediately after the October 2019 default on the Notes, the defendants filed the Declaratory Judgment Action before Judge Failla "to invalidate the 2020 Notes."  And as the New York Court of Appeals has now instructed us, the issue of validity must indeed by assessed under Venezuelan law.  The plaintiff's alternative theory of fraud, therefore, fails.

C. Aiding and Abetting Fraud

The plaintiff claims that, in the alternative, each of the PDVSA parties knew of the other defendants' fraud and substantially assisted in that fraud.  To establish liability for aiding and abetting fraud under New York law, the plaintiff must show "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014) (citation omitted). There must be a "nexus" between the three elements.  Id.  A cause of action for aiding and abetting fraud is barred, however, where there is no underlying fraud.  Republic of Kazakhstan v. Chapman, 191 N.Y.S.3d 374, 377 (1st Dep't 2023).

The FAC fails to sufficiently plead its two counts of common law fraud.  As a result, there is no underlying fraud

upon which the plaintiff may allege that a defendant aided and abetted a fraud.  This claim, therefore, also fails.

IV.     Leave to Amend

The plaintiff requests that, if the defendants' motion to dismiss is granted, it be given leave to amend the FAC.  In general, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted).  Additionally, a plaintiff "need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014).

The plaintiff's request for leave to amend is denied.  The plaintiff has already amended its complaint in response to the defendants' prior motion to dismiss and was cautioned that it was unlikely it would be given a further opportunity to amend. The plaintiff has not identified how further amendment would address the deficiencies in the FAC, for instance, by filing a proposed second amended complaint with its opposition to this motion.

## Conclusion

The defendants' November 29, 2023 motion to dismiss the FAC is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:     New York, New York
           April 8, 2024

_____
DENISE COTE
United States District Judge