Case: 24-1176, 12/17/2024, DktEntry: 57.1, Page 1 of 11
Case 1:23-cv-05604-DLC   Document 54   Filed 12/18/24   Page 1 of 11

**MANDATE**

24-1176-cv
*VR Global Partners, L.P. v. Petróleos de Venezuela, S.A.*

1:23-cv-05604-DLC

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 18 2024

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of November, two thousand twenty-four.

PRESENT:  AMALYA L. KEARSE,
          REENA RAGGI,
          MARIA ARAÚJO KAHN,
          *Circuit Judges.*

───────────────────────────────────────────

VR GLOBAL PARTNERS, L.P.,

    *Plaintiff-Appellant*,

    v.      24-1176-cv

PETRÓLEOS DE VENEZUELA, S.A.,
PDVSA PETRÓLEO, S.A.,
PDV HOLDING, INC.,

    *Defendants-Appellees.*

───────────────────────────────────────────

MANDATE ISSUED ON 12/17/2024

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | Benjamin A. Butzin-Dozier and Christopher J. Clark, Clark Smith Villazor LLP, New York, NY. |
| FOR DEFENDANTS-APPELLEES: | Kurt W. Hansson, James L. Ferguson, and Zachary D. Melvin, Paul Hastings LLP, New York, NY; Igor V. Timofeyev, Paul Hastings LLP, Washington, D.C., *for Defendants-Appellees Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.* |
| | Michael J. Gottlieb and Kristin E. Bender, Willkie Farr & Gallagher LLP, Washington, D.C.; Jeffrey B. Korn, Willkie Farr & Gallagher LLP, New York, NY; Nicholas Reddick, Willkie Farr & Gallagher LLP, San Francisco, CA, *for Defendant-Appellee PDV Holding, Inc.* |

Appeal from the April 8, 2024, judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

This is a civil action by an investment fund alleging a Venezuelan state-run oil and gas company engaged in a scheme to defraud by intentionally and knowingly issuing invalid notes and subsequently defaulting on those notes. Plaintiff-Appellant VR Global

2

Partners, L.P. ("VR") filed this action against Defendants-Appellees Petróleos de Venezuela, S.A. ("PDVSA") and two subsidiaries, PDVSA Petróleo, S.A. ("PDVSA Petróleo") and PDV Holding, Inc. ("PDVH"), asserting securities and common law fraud claims relating to certain PDVSA-issued notes purchased by VR on the secondary market. VR asserts that, in 2016, Appellees represented that the notes were valid and governed by New York law, while knowing the notes to be invalid and governed by Venezuelan law, and developing a scheme to repudiate them on that ground. VR now appeals the district court's dismissal of the suit for failure to state a claim, based, *inter alia*, on the amended complaint's failure to adequately allege that a scheme to defraud existed at the time of or before VR's purchase of the notes in 2017 and 2018. VR also challenges the district court's denial of leave to further amend the complaint.

## BACKGROUND

PDVSA is a Venezuelan state-owned oil and natural gas company.[1] PDVH—a PDVSA subsidiary incorporated in Delaware—owns CITGO Holding, Inc. ("CITGO Holding"), which in turn, owns CITGO Petroleum Company, a U.S.-based oil refiner. In April 2007, October 2010, and January 2011, PDVSA issued over $9 billion in notes, originally maturing in 2017 (the "2017 Notes").

---

[1] Our description of the facts is drawn from the amended complaint and assumes them to be true for purposes of our *de novo* review of the district court's judgment, and we draw all reasonable inferences from the alleged facts in VR's favor. *See Schlosser v. Kwak*, 16 F.4th 1078, 1080 (2d Cir. 2021).

3

In September 2016, PDVSA, then controlled by the regime of Venezuelan President Nicolás Maduro, decided to refinance the 2017 Notes by offering to exchange them for new notes, maturing in October 2020 ("the 2020 Notes"). It filed with the U.S. Securities and Exchange Commission ("SEC") an offering circular, an indenture agreement that provided that the 2020 Notes were governed by New York law, and a pledge agreement stating that PDVH pledged 50.1% of the shares of CITGO Holding as collateral.

On September 27, 2016, a month before the exchange offer for the 2020 Notes was formalized, Venezuela's National Assembly adopted a resolution that "categorically rejected" the pledge of PDVH's CITGO Holding shares as collateral for the 2020 Notes. App'x 710 ¶ 43 (alterations adopted). That resolution built upon a May 2016 resolution asserting that the Venezuelan Constitution "categorically mandate[d], without exception, the approval of the National Assembly" of any "contracts of national interest." App'x 687, 726. In response, PDVSA's legal counsel issued opinion letters stating that the "2020 Notes, the Indenture, and the Pledge Agreement were legal, valid and binding[,] . . . that the execution of these documents by [PDVSA] was duly authorized," and that approval by the National Assembly was not required. App'x 719 ¶ 73. The dispute over the validity of the 2020 Notes was well documented and publicly known at the time of their offering.[2]

---

[2] *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263, 266 (2d Cir. 2024); *see also, e.g.*, Ana Isabel Martinez and Corina Pons, *Venezuela's PDVSA Offers $7 Bln Bond Swap to*

4

In 2016, power within Venezuela's government was divided between President Maduro and the National Assembly, Venezuela's unicameral legislature, which was controlled by opposition leader Juan Guaidó and his allies.  In January 2019, after Maduro's disputed reelection to the presidency, the National Assembly and the United States officially recognized Guaidó as Venezuela's legitimate President.  The following month, Guaidó appointed an ad hoc board of directors for PDVSA.  It is against this political backdrop that the relevant events leading to this lawsuit occurred.

Plaintiff-Appellant VR, a New York-based investment fund, purchased $30 million in original principal of the 2020 Notes on the secondary market between August 2017 and January 2018.  PDVSA paid over $2 billion in combined principal and interest on the 2020 Notes between October 2017 and April 2019.

By April 2019, PDVSA was under the control of the ad hoc board established by Guaidó.  In October 2019, the National Assembly formally declared the 2020 Notes

---

*Ease Debt Burden*, Reuters (Sept. 13, 2016), https://www.reuters.com/article/markets/us/venezuelas-pdvsa-offers-7-bln-bond-swap-to-ease-debt-burden-idUSL1N1BP1D0 [https://perma.cc/9SBX-M93L]; Carolyn Cui, *Venezuela's PdVSA to Offer to Swap $7 Billion in Debt*, Wall St. J. (Sept. 14, 2016), https://www.wsj.com/articles/venezuelas-pdvsa-to-offer-to-swap-7-billion-in-debt-1473878226 [https://perma.cc/9YW9-YFGU]; Eyanir Chinea & Brian Ellsworth, *S&P Says PDVSA Bond Swap Offer "Tantamount to Default,"* Reuters (Sept. 19, 2016), https://www.reuters.com/article/idUSKCN11Q05E [https://perma.cc/W9VS-39LX] ("[The National Assembly] has said it will oppose the use of Citgo as collateral.").

5

invalid, and PDVSA defaulted later that month.[3] The day after the default, Appellees filed an action in the Southern District of New York seeking a declaratory judgment that the 2020 Notes and their governing documents are void because the National Assembly did not approve them.[4] While that action was pending, VR filed this separate fraud action against the Appellees.

We assume the parties' familiarity with the remaining facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## DISCUSSION

We review *de novo* the district court's granting of Appellees' motion to dismiss. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 99–100 (2d Cir. 2015). A complaint is

---

[3] This followed advice given to Guaidó by Special Attorney General José Ignacio Hernández in an April 2019 memorandum, which proposed strategies to avoid making payments on the 2020 Notes, including declaring that the 2016 exchange offer and the 2020 Notes were invalid under the Venezuelan Constitution because the pledge of CITGO Holding stock as collateral had not been approved by the National Assembly.

[4] On October 16, 2020, the district court held the 2020 Notes valid and enforceable under New York law. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257, 292 (S.D.N.Y. 2020). On October 13, 2022, this court certified to the New York Court of Appeals the question of what jurisdiction's laws apply to the 2020 Notes. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 475–76 (2d Cir. 2022), *certified question accepted*, *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 39 N.Y.3d 960, 178 N.Y.S.3d 744 (2022). On February 20, 2024, the Court of Appeals held that Venezuelan law governs the legality of the 2020 Notes but that New York law governs the consequences of any defect in validity. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462, 473, 482, 212 N.Y.S.3d 265, 271, 277 (2024). Accordingly, on July 3, 2024, we vacated the district court's decision and remanded for further proceedings in light of the Court of Appeals' ruling. *See Petróleos de Venezuela S.A.*, 106 F.4th at 270.

6

properly dismissed where it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In making this assessment, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."  *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (internal quotation marks omitted).

Securities fraud claims are subject to a heightened pleading standard under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* 15 U.S.C. § 78u-4(b)(1)–(2).  Pursuant to the PSLRA, a plaintiff must "specify each misleading statement; . . . set forth the facts on which a belief that a statement is misleading was formed; and . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (internal quotation marks omitted).  In federal litigation, a heightened pleading standard also applies to New York common law fraud claims pursuant to Fed. R. Civ. P. 9(b) (requiring party to "state with particularity the circumstances constituting fraud"). *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170–71 (2d Cir. 2015).

I. **Federal Securities Fraud**

Section 10(b) of the Exchange Act makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or

7

contrivance in contravention of" SEC rules. 15 U.S.C. § 78j(b). The SEC's Rule 10b-5(a), (c) provides, in turn:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud, . . . or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(a), (c).

"To state a scheme liability claim, a plaintiff must show: (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (internal quotation marks omitted). A plaintiff may establish scienter by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, --- F.4th ----, 2023 WL 11965444, at *12 (2d Cir. Oct. 31, 2024) (internal quotation marks omitted).

In granting dismissal, the district court held that the only scheme plausibly alleged began in early 2019, after VR's purchase of the 2020 Notes, when Guaidó and Hernández implemented a plan to cease payments on the 2020 Notes and to protect the CITGO Holding stock collateral. *See VR Glob. Partners, L.P. v. Petróleos de Venezuela*, No. 23-CV-

8

5604 (DLC), 2024 WL 1514982, at *7 (S.D.N.Y. Apr. 8, 2024).

VR argues that the district court erred in failing to consider allegations in the amended complaint that indicate the existence of a fraud scheme beginning in 2016: 1) PDVSA's legal counsel's 2016 opinion letters stating that the 2020 Notes and their governing documents were legal, 2) the National Assembly's May and September 2016 resolutions questioning the legality of the 2020 Notes, 3) notwithstanding these resolutions, statements by individual Assembly representatives assuring financial analysts that the resolutions were not binding and the 2020 Notes were nonetheless valid, and 4) PDVSA's omission of the National Assembly resolutions from the risk factors identified in the exchange offer documents.

In fact, the record shows that the district court considered these allegations and correctly concluded that they are insufficient to allege a plausible scheme to defraud when VR purchased the 2020 Notes. To the contrary, these statements show that, in 2016, the Maduro-controlled PDVSA offered the 2020 Notes despite the opposition-led National Assembly's categorical rejection of the exchange offer; and, in 2019, when the National Assembly took control of PDVSA, the new ad hoc board sought to invalidate the 2020 Notes. Contrary to VR's arguments, the amended complaint does not allege false representations in 2016 because the opposition-led National Assembly and Guaidó

9

were not then in control of PDVSA.[5]  In sum, the statements do not reflect a scheme to defraud, but, rather, a risky investment due to a public fight for control of PDVSA. Finally, as the district court noted, the payment of over $2 billion in interest and principal on the 2020 Notes is inconsistent with any intent to defraud investors before 2019.  In this respect, any inference of scienter which can be drawn from the amended complaint is not "cogent" let alone "at least as compelling as any opposing inference of nonfraudulent intent."  *DeCarlo*, 2023 WL 11965444, at *12 (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007)).

Because we hold that VR failed to allege a plausible scheme to defraud that commenced before VR purchased the 2020 Notes or scienter with respect to such a scheme, we affirm the district court's dismissal of the securities fraud claims.[6]

Also, given VR's failure to identify, below or on appeal, how further amendment

---

[5] VR also directs us to decisions by the Third Circuit and the U.S. District Court for the District of Delaware holding that both the Guaidó and the Maduro governments and their PDVSA boards hold authority to speak for PDVSA, and that PDVSA is the alter ego of Venezuela. *See OI Eur. Grp. B.V. v. Bolivarian Rep. of Venez.*, 73 F.4th 157, 174 (3d Cir. 2023); *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 932 F.3d 126, 152 (3d Cir. 2019); *OI Eur. Grp. B.V. v. Bolivarian Rep. of Venez.*, 663 F. Supp. 3d 406, 433–34 (D. Del. 2023).  Even if we were to impute the National Assembly resolutions and member statements to PDVSA, the district court's conclusion that VR failed to plead a plausible fraudulent scheme or scienter existing prior to 2019 remains correct because the statements indicate only that two opposing regimes bitterly contested control over PDVSA, not that Appellees were engaged in a knowing scheme to defraud investors when VR purchased the 2020 Notes.

[6] Because we hold that VR has failed to plead a scheme to defraud, we need not address the parties' arguments with respect to the remaining grounds to dismiss the Exchange Act claim, including reliance or causation.

10

of the amended complaint would rectify pleading deficiencies identified by the district court, we identify no abuse of discretion in the district court's denial of leave to amend.

## II.   Common Law Fraud

For the reasons discussed above, we conclude that VR failed to plead a plausible claim for fraud under New York common law, the elements of which are nearly identical to those of federal securities fraud.[7]  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (listing the elements of fraud under New York law). We therefore affirm the district court's dismissal of that claim.[8]

\*   \*   \*

We have considered VR's remaining arguments and conclude that they are without merit.  For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit
*Catherine O'Hagan Wolfe*

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
*Catherine O'Hagan Wolfe*

---

[7] In its opening brief, VR does not discuss its claim for aiding and abetting fraud raised below.  For that reason, we assume that VR has declined to appeal the district court's dismissal of that claim.  VR also does not raise its alternative theory for common law fraud, that Appellees' statements in 2019 and 2020, averring the 2020 Notes were invalid, were false because the 2020 Notes are legal and enforceable.

[8] We do not reach the issues of extraterritoriality or timeliness of the amended complaint because we affirm the dismissal of the Exchange Act and common law fraud claims on the merits.

11